**In re Ethel M. ELLINGSON, Debtor.**

**Jan S. Ostrovsky, United States Trustee, Plaintiff,**

v.

**Connie L. Monroe, Defendant.**

**Bankruptcy No. 98–51181–7.
Adversary No. 98/00082.**

United States Bankruptcy Court,
D. Montana,
Butte Division.

Feb. 16, 1999.

Daniel P. McKay, Office of United States Trustee, Great Falls, MT, for the plaintiff United States trustee.

Connie S. Monroe, Kalispell, MT, Diane Keefauver Collier, Affordable Legal Services, Marion, MT, for defendant.

## *ORDER*

JOHN L. PETERSON, Chief Judge.

In this adversary proceeding the Plaintiff Jan S. Ostrovsky, United States Trustee, seeks an injunction against the Defendant Connie L. Monroe ("Monroe"), permanently prohibiting Monroe from assisting any person with the preparation and filing of any document or pleading in this Court, and from engaging in the unauthorized practice of law. The Defendant filed an answer on October 1, 1998, which is not signed. After due notice, trial of this cause was begun at Missoula on November 19, 1998, and concluded on December 17, 1998. The Plaintiff was represented by Daniel P. McKay ("McKay"), senior attorney-advisor to the United States Trustee. Monroe, who began this adversary proceeding and represented herself *pro se* at trial on November 19, 1998, was represented at the continuation of trial on December 17,

1998, by counsel Diane Keefauver Collier[1] ("Collier"). Testimony of Ethel Ellingson ("Ellingson"), Debtor in Case No. 98–51181–7, Chasity Erwin ("Chasity"), Debtor in Case No. 98–52815–7, and Monroe's employee Amy Hallock ("Hallock") was heard, and several exhibits were admitted into evidence without objection. In addition the Court took judicial notice of Erwins' Chapter 7 Case No. 98–52815–7. At the close of the trial the Court took this matter under advisement and granted the parties time to file memoranda of law.

The Plaintiff filed his memorandum on December 28, 1998, which has been reviewed by the Court along with the applicable law. Monroe has not filed a memorandum, and did not file a request for an extension of time. Monroe did file a motion to dismiss on December 28, 1998, based upon changed circumstances, i.e., Collier's employment of Monroe[2]. Upon review of the Plaintiff's memorandum and applicable law, this matter is ready for decision. For the reasons set forth below, Judgment shall be entered against Monroe enjoining her from preparing or filing any bankruptcy documents or pleadings in this Court on behalf of any other person or entity.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) concerning the administration of bankruptcy estates. This Order contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

## FACTS

Monroe is a non-attorney bankruptcy petition preparer and "independent paralegal" in Kalispell, Montana, doing business as "Paralegal Services of Kalispell", who was hired by Ellingson and Erwins to prepare their bankruptcy documents.

### I. Ethel Ellingson—Case No. 98–51181–7.

Ellingson lives on social security disability, which was being consumed by the interest accruing on her credit card debt, leaving her little benefits with which to support herself. Ellingson learned of Monroe from Jerry O'Neil, a non-attorney paralegal, who recommended Monroe and another non-attorney paralegal[3] to aid her in preparing a bankruptcy petition. Ellingson contacted Monroe about filing a Chapter 7 bankruptcy case. They arranged a meeting, which took place in April of 1998.

At the meeting Monroe gave Ellingson "a bunch of papers to fill out" which asked Ellingson what property she owned and what debts she owed. (Exhibit D—Ellingson deposition pp. 8, 10). Exhibit 8 is the "Client Questionnaire" given to Ellingson by Monroe. Exhibit 8 is a printed form calling for information about the debtor's assets, liabilities, income and expenses and other matters. Exhibit 8 also includes a listing of available Montana exemption statutes taken from Exhibit C, a manual entitled "How to File Bankruptcy", and a description of each statute. Monroe told Ellingson to complete the Client Questionnaire and return it to Monroe, who would enter Ellingson's responses into a computer program which would then generate her bankruptcy petition, Schedules and Statements.

By Ellingson's account, Monroe talked to her "a lot" about exemptions and other matters involving her bankruptcy, but admits that "it just went in one ear and out the other". Exhibit D p. 30. On direct examination, Monroe asked Ellingson whether Ellingson asked Monroe about exemption codes, or whether Ellingson told Monroe she needed the exemption sections. Ellingson testi-

---

1. Collier filed on January 13, 1999, a notice of withdrawal of counsel, stating that she has withdrawn as Monroe's counsel "on the grounds and for the reasons that Defendant has persisted in a course of conduct contrary to the judgment and advice of her attorney, and employer."

2. With Collier's notice of withdrawal of counsel filed January 13, 1999, stating that Monroe is no longer employed by Collier, Monroe's motion to dismiss is not based upon any stated grounds of law or fact, and therefore will be denied.

3. Ellingson testified she could not afford an attorney to represent her. She had called an attorney identified only as "the one that's in so much trouble", Exhibit D pp. 42–43, but his fee was too expensive.

fied in response: "You told me I needed them".

Ellingson testified that Monroe told her to go to the library to get the exemption codes. Ellingson went, but returned with a copy of outdated exemption statutes. Monroe then gave Ellingson Exhibit C, a book entitled "How to File for Bankruptcy" which includes a list of Montana exemptions attached to Exhibit 8.

At the bottom of the list of exemptions attached to Exhibit 8 is the statement. "I Ethel Ellingson told Connie Monroe the above exception to use for my property. April 22, 1998." At the top, in Monroe's handwriting, is stated: "Us [sic] wild card exempt for $600.00 of the vehicle because it is over the $1,200.00." In the middle of the list, at the motor vehicle exemption statute, is written in Monroe's handwriting "1990 Pontiac/use wild card Also."

The motor vehicle exemption was of particular concern to Ellingson, who was scared about losing her car, a 1990 Pontiac 6000, because her equity in the car exceeded Montana's allowed $1,200 exemption. Ellingson heard about the "wildcard" [4] exemption available under Mont.Code Ann. § 25–13–609(1) from either Monroe or from someone in the public library. Monroe discussed the wildcard exemption with Ellingson and its availability to her motor vehicle [5]. In Ellingson's deposition McKay asked her: "So I guess let's not beat around the bush. Did [Monroe] tell you you could use a wild card exemption on your vehicle?" Ellingson answered "Yes". Exhibit D, p. 28 lines 1–4.

When Ellingson returned the completed Exhibit 8 to Monroe she was told to bring her $175 in cash and another $175 as a money order for the filing fee. Monroe gave Ellingson a receipt for $175 dated April 23, 1998. Ellingson signed her petition, State-

ments and Schedules under penalty of perjury.

However, Ellingson did not understand and could not explain several of the entries on her Schedules and Statements. McKay elicited testimony from Ellingson in her deposition that Ellingson did not understand what several of the entries meant, including: What the $1,200 motor vehicle exemption meant; why no entries were made on Schedule E for priority claims; why the car was listed twice on Schedule C; and other entries. The Court finds that Ellingson clearly relied [6] on Monroe's advice and that Monroe prepared Ellingson's bankruptcy petition, Schedules and Statements.

Ellingson obtained a money order in the sum of $175 from the post office, and mailed it with the signed petition, Schedules and Statements to the Clerk's Office at Butte, where they were filed on April 30, 1998. Monroe is identified on the petition as a bankruptcy petition preparer and signed the petition on April 28, 1998, the day before Ellingson signed. Monroe filed with Ellingson's petition a disclosure of compensation of bankruptcy petition preparer required under 11 U.S.C. § 110(h). The Trustee entered a no asset report on July 24, 1998, A Discharge was entered August 6, 1998, and the case was closed on August 14, 1998.

## II. James and Chasity Erwin—Case No. 98–52815–7.

Debtors James and Chasity Erwin moved to Kalispell from Illinois. Before moving Chasity telephoned a law firm in Illinois and obtained forms for preparing a budget and list of creditors (Exhibit 4), which Erwins completed and brought with them to Kalispell. Chasity obtained Monroe's name from Chasity's sister, and called Monroe to set up

---

4. In her testimony Ellingson described the exemption as the "wild turkey" exemption.

5. Under Montana law a debtor may claim a $1,200 exemption in one motor vehicle under Mont.Code Ann. § 25–13–609(2), but the wildcard exemption of § 25–13–609(1) may not be stacked on top of the $1,200 exemption limit for a motor vehicle. *In re Neutgens*, 7 Mont.B.R. 43, 45–48 (Mont.1989).

6. In Exhibit D, p. 27, lines 23–25, Ellingson responds to McKay's question about her claim of a wild card exemption in her car: "She [Monroe] said something about a wild card and—Well, I don't—She knows what she's doing, I though anyhow, so—." Also p. 29, lines 1–5: "I know she done—She told me a lot, but—... I just figured, Well, she knows what she's doing; I don't."

an appointment. Monroe told Chasity to bring $350 in cash to the first meeting.

Chasity attended the first meeting with Monroe alone, taking Erwins' bills and Exhibits 1 and 4, along with the $350 cash which she gave to Monroe. At the meeting Chasity testified that Monroe told her that Monroe's fee would be $350 for the Chapter 7 bankruptcy, and that Erwins would have to bring an additional $85 money order to pay the first installment of the filing fee, which was $175. Monroe gave Chasity a receipt (Exhibit A) which states that Erwins paid Monroe only $175[7]. Exhibit A is signed by Monroe and dated September 8, 1998. Exhibit A also includes a notation that the filing fee is $175; and that Erwins should "bring back M.O. for this", meaning a money order. Monroe stated to Chasity that she was not supposed to receive any fee until the filing fee was paid.

Chasity gave Monroe a list of Erwins' personal property, Exhibits 1 and 4. Monroe entered the information from Exhibits 1 and 4 into her computer program and prepared Erwins' bankruptcy Schedules, Statements and a petition. Monroe told Chasity that the Court would ask about exemptions, but Chasity did not know or understand anything about exemptions. Monroe gave Chasity Exhibit 2, a list of Montana Exemptions copied from Exhibit C, similar to the list Monroe gave Ellingson which is part of Exhibit 8. But before giving Chasity Exhibit 2, Monroe insisted Chasity write the following at the bottom of Exhibit 2: "I gave Connie Monroe the exemption codes that I wanted used in my bankruptcy", next to which is signed Chasity Erwin's name and "9–08–98". Chasity testified that Monroe told her Monroe couldn't give her the exemption codes, and that Chasity's statement was necessary to obtain Exhibit 2.

The Court finds that Chasity, like Ellingson, relied on Monroe to make all decisions related to the preparation of Erwins' petition, Schedules and Statements, including the selection of claimed exemptions. In Chasity's words: "She did it all for me ... I didn't do nothing." After generating Erwins' petition, Schedules and Statements on her computer, Monroe signed Erwins' bankruptcy documents on September 23, 1998, and mailed them to Erwins with a cover letter, Exhibit B. Exhibit B explains to Erwins that they need to look over the documents to make sure all was correct. The third sentence of Exhibit B, which reads: "Remember the fee is $350 which is $175 to me and $175 filing fee" is crossed out, and in Monroe's handwriting is written instead: "You paid me nothing but will by December 31, 1998." This statement contradicts not only the receipt Monroe gave Chasity, Exhibit A, but also Chasity's testimony that she paid Monroe $350 at their first meeting at Monroe's insistence.

With respect to exemptions Exhibit B states:

"Also there has been a lot of confusion as to the exemption codes! These are the codes that exempt your personal property and keep your property from being sold to pay debtor's [sic]. The Court's [sic] think I should not be able to tell you which codes to use or that they even exist, even though my program does this automatically. *So as far as the Courts are concerned we went over these together and you personally told me which codes to use. You got a copy of these from the Public Library or out of a book somebody had or whatever!* .... GOOD LUCK IN COURT! *Do not sent* [sic] *this letter with your Petition! This is for your reference only!* " (Emphasis added).

On cross examination of Chasity by Monroe regarding Exhibit B and the exemption codes Chasity testified: "She wanted me to lie and say I got these from a friend in Illinois."

Erwins' signed their petition, Schedules and Statements on September 25, 1998, and mailed them to the Clerk with an $85 money order as the first installment payment of the filing fee[8]. Erwins' petition, Schedules and Statements were filed September 29, 1998.

---

7. The amounts $175 are written over other numbers on the receipt, Exhibit A. Chasity testified that Monroe changed the numbers on Exhibit A from $350 from $175 after Chasity had paid Monroe $350.

8. The filing fee was paid in full by December 9, 1998.

Also filed on September 29, 1998, was an application to pay filing fee in installments, signed not by Erwins but by Monroe only. Monroe, by signing the application, certified "that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document. *I also certify that I will not accept money or any other property from the debtor before the filing fee is paid in full.*" (Emphasis added)[9]. This certification was false. Exhibit A and Chasity's testimony shows, and this Court finds, that Erwins paid Monroe no less than $175 on September 8, 1998.

The Court also finds that Monroe falsely declared under penalty of perjury that her disclosure of compensation of bankruptcy petition preparer, signed by her on September 23, 1998, and filed with Erwins' petition, is true and correct. Monroe's disclosure fails to disclose the cash payment from Erwins' on September 8, 1998. Instead it states that Monroe will be paid $175 by December 31, 1998.

The Schedules and Statements filed by Erwins on September 29, 1999, contained several errors. Schedule A lists a mobile home [10], which Chasity stated Debtors had sold under contract before their petition date. Erwins owned no real property on the petition date. Schedule B lists three motor vehicles, including a 1992 Chevy Van which Chasity testified had been repossessed in 1996 or 1997. Chasity did not know why the Chevy Van value is listed as "unknown". The market value listed at Schedule B for the Erwins' 1997 Buick Skylark, according to Chasity's testimony, is incorrect and instead represents the payoff amount. Chasity did not know why Schedule C lists exemption amounts for the Aerostar and Skylark as $2,400. In addition, several of Erwins' creditors had been omitted.

These errors and omissions prompted Erwins to hire an attorney, M. Penny Leatzow ("Leatzow") to represent them and prepare amendments. Leatzow represented the Erwins *pro bono*, and filed motions to amend mailing matrix, petition and Schedules on October 22, and October 27, 1998. A Discharge was entered January 5, 1999. A no-asset report was filed by the Trustee on January 7, 1999. A Final Decree closing Erwins' Chapter 7 case was entered January 8, 1999.

## CONTENTIONS OF THE PARTIES

Plaintiff requests Judgment and an injunction to prohibit Monroe from engaging in the unauthorized practice of law by aiding or representing debtors in cases before this Court. Plaintiff contends Monroe engaged in the unauthorized practice of law in preparing Ellingson's and Erwins' bankruptcy cases by preparing the petitions, Schedules and Statements herself and scheduling assets, liabilities and exemptions according to her own determinations rather than her clients'. In addition the Plaintiff argues that Monroe encouraged Erwin to mislead this Court on the matter of the source of her claimed exemptions. Plaintiff further contends that Monroe made false statements to the Court in her disclosure of compensation filed in Ellingson's Chapter 7 case.

Monroe did not testify. As near as can be discerned from her pleadings, Monroe contends she was not practicing law in aiding Ellingson and Erwins with their bankruptcy cases, and is merely a bankruptcy petition preparer.

## DISCUSSION

█ The Plaintiff, as the party seeking an injunction which is governed by F.R.B.P. 7065 (applying Fed.R.Civ.P. 65 in adversary proceedings) has the burden of demonstrating to the Court why the injunction should be issued. *In re Porro*, 10 Mont.B.R. 342, 346

---

9. F.R.B.P. 1006(b) governs payment of filing fee in installments. Rule 1006(b)(3) provides: "Postponement of Attorney's Fees. The filing fee *must be paid in full before the debtor or chapter 13* trustee may pay an attorney *or any other person who renders services to the debtor in connection with the case.*" (Emphasis added).

10. A mobile home is personal property which should not be listed on Schedule A in any event, Schedule A being reserved for real property.

(Bankr.Mont.1992) (*quoting Wedgewood Investment Fund, Ltd. v. Wedgewood Realty Group, Ltd.*, 878 F.2d 693 (3rd Cir.1989)). Rule 65(d) provides:

> Every order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

As stated in 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2941, pp. 34–35 (2nd ed.1995):

> In general, Rule 65 is confined to procedural matters that are intended to guard against an abuse of the injunction remedy; but it does not set out a comprehensive or detailed procedural frame-work for seeking injunctive relief.

> \*   \*   \*   \*   \*   \*

> In keeping with its procedural function, Rule 65 does not confer either subject-matter or personal jurisdiction on the court. As is true of civil actions generally, an independent basis for asserting federal question or diversity jurisdiction must be shown and, except in cases in which the injunction is operative "in rem," the court must have personal jurisdiction over the party against whom equitable relief is sought.

Personal jurisdiction over the defendant Monroe has been attained and Monroe has sought to defend against the Plaintiff's allegations on the merits. Furthermore, independent grounds for personal jurisdiction rests in the Court under 11 U.S.C. § 110 and 28 U.S.C. § 157(b)(2)(A), defining that core proceedings include, *inter alia*, matters concerning the administration of the estate.

## I. Bankruptcy Petition Preparer—11 U.S.C. § 110.

Monroe is a non-attorney bankruptcy petition preparer who was hired by Ellingson and Erwin to prepare their bankruptcy docu-

ments. In recently construing 11 U.S.C. § 110, this Court wrote:

> Section 110 of Title 11 was enacted as part of the Bankruptcy Reform Act of 1994, and provides penalties for a person other than an attorney or employee of an attorney who negligently or fraudulently prepare bankruptcy petitions. *In re Stacy*, 193 B.R. 31, 35 (Bankr.D.Or.1996). The House Report explains the rationale behind § 110 as follows:

> > Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country. While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

> H.R.Rep. 103–384, 103rd Cong., 2nd Sess. at 40–41 (Oct. 4, 1994).

> Section 110(h) requires a bankruptcy petition preparer to disclose any fee received from or on behalf of the debtor within 12 months prior to the petition date, and any unpaid fee charged to the debtor.

*In re Farner,* 17 Mont.B.R. 48, 50 (Bankr. Mont.1998).

■ It is a violation of § 110(h)(1) to fail to disclose any fee received from or on behalf of debtors. *In re Kaitangian*, 218 B.R. 102, 114–15 (Bankr.S.D.Cal.1998). Chasity Erwin's testimony that she paid Monroe $350 at Monroe's insistence on September 8, 1998, is uncontroverted. Having observed Chasity's demeanor on the witness stand while testifying under oath, the Court finds that she is a credible witness. Her testimony that she paid Monroe on September 8, 1998, is corroborated by Exhibit A which is signed by Monroe. This evidence shows and this Court finds that Monroe falsely certified that she had received no funds from Erwins when Monroe signed the filing fee installment ap-

plication on September 23, 1998, and that Monroe falsely signed her disclosure of compensation under penalty of perjury on September 23, 1998, stating that prior to the filing of the statement she had received $0. Monroe received funds from Erwins on September 8, 1998. Exhibit A. Monroe's false statements violated her obligation to disclose any fee received from or on behalf of the Erwins under § 110(h)(1).

Section 110(k) of the Bankruptcy Code, part of § 110 authorizing bankruptcy petition preparers to prepare for compensation a petition or other document for filing in a bankruptcy court, specifically provides that "[n]othing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." *In re Agyekum,* 225 B.R. 695, 701 (9th Cir. BAP 1998). Monroe denies the Plaintiff's contentions that her activities on behalf of Ellingson and Erwins constituted the unauthorized practice of law.

## II. Unauthorized Practice of Law.

■ Montana statutes governing the unauthorized practice of law are found at Mont. Code Ann. § 37–61–201:

> **37–61–201. Who considered to be practicing law.** Any person who shall hold himself out or advertise as an attorney or counselor at law or who shall appear in any court of record or before a judicial body, referee, commissioner, or other officer appointed to determine any question of law or fact by a court *or who shall engage in the business and duties and perform such acts, matters, and things as are usually done or performed by an attorney at law in the practice of his profession for the purposes of parts 1 through 3 of this chapter shall be deemed practicing law.* (Emphasis added).

Section 37–61–201 does not require that one must be admitted to the State Bar of Montana in order to be "deemed practicing law" in Montana. *Shapiro v. Jefferson County,* 278 Mont. 109, 115, 923 P.2d 543, 547 (1996).

■ There is a split of authority whether preparation of preprinted legal forms constitutes unauthorized practice of law. Montana follows the majority view that preparation or filling in of blanks on preprinted forms constitutes the practice of law. *Pulse v. North Am. Land Title Co.,* 218 Mont. 275, 707 P.2d 1105, 1109 (1985). One district court, citing *Pulse v. North Am. Land Title Co.,* wrote on the unauthorized practice of law:

> Preparation of legal documents is "commonly understood to be the practice of law." *Grievance Committee v. Dacey,* 222 A.2d at 349. What constitutes "preparation" of "legal documents" is construed broadly. "Preparation of instruments, even with preprinted forms, involves more than a mere scrivener's duties" and, therefore, constitutes the practice of law. *State v. Buyers Service, Co.,* 292 S.C. 426, 357 S.E.2d 15, 17 (1987). *See also Pulse v. North Am. Land Title Co.,* 218 Mont. 275, 707 P.2d 1105, 1109 (1985) ("drafting or filling in of blanks in printed forms of instruments dealing with land" constitutes the practice of law); *Kennedy v. Bar Ass'n,* 316 Md. 646, 561 A.2d 200, 208 (1989) (preparation of legal documents in patent case constitutes the practice of law). Legal documents purport to allocate legal obligation.
>
> The preparation of documents in simple divorce actions unequivocally constitutes the practice of law. *See, United States v. Hardy,* 681 F.Supp. 1326, 1328–29 (N.D.Ill. 1988) ("Common sense dictates that the drafting of even a simple complaint or an uncomplicated petition for dissolution of marriage requires at least some degree of legal knowledge or skill");

*Monroe v. Horwitch,* 820 F.Supp. 682, 687 (D.Conn.1993), *aff'd,* 19 F.3d 9 (1994).

Exhibit B, together with Chasity's and Ellingson's testimony show, and this Court finds, that Monroe engaged in the unauthorized practice of law in both Ellingson's and Erwins' Chapter 7 bankruptcy cases. The record is clear that Monroe advised Ellingson and Erwins of available exemptions, provided them with a comprehensive list of available exemptions, determined where property and debts were to be scheduled,

summarized and reformulated information solicited from clients, and generated the completed bankruptcy forms for Ellingson and Erwin on her computer. These tasks require the exercise of legal judgment beyond the capacity and knowledge of lay persons such as Monroe. *In re Herren*, 138 B.R. 989, 994–95 (Bankr.Wyo.1992) (*citing In re Anderson*, 79 B.R. 482, 485 (Bankr.S.D.Cal. 1987); *O'Connell v. David*, 35 B.R. 141, 143 (Bankr.E.D.Pa.1983) *aff'd* 740 F.2d 958 (3rd Cir.1984); *In re Bachmann*, 113 B.R. 769, 772–3 (Bankr.S.D.Fla.1990)). By soliciting information in Exhibit 8 and preparing Schedules and Statements on her computer, Monroe rendered legal advice and therefore engaged in the unauthorized practice of law. *In re Agyekum*, 225 B.R. at 700; *Herren*, 138 B.R. at 994; *In re Grimes*, 115 B.R. 639, 643 (Bankr.S.D.1990).

> The Washington Supreme Court wrote:
>
> The unauthorized practice of law is prohibited to protect the public. See, e.g., *Bowers*, 100 Wash.2d at 586, 675 P.2d 193; *Monroe*, 820 F.Supp. at 687; *Dauphin Cy. Bar Ass'n v. Mazzacaro*, 465 Pa. 545, 551–2, 351 A.2d 229, 232–33 (1976); *Brown v. Unauthorized Practice of Law Comm.*, 742 S.W.2d 34, 41–42 (Tex.Ct.App.1987). As the Washington Supreme Court has stated, "there is no such thing as a simple legal instrument in the hands of a layman." *Hagan & Van Camp*, 96 Wash.2d at 447, 635 P.2d 730 (*quoting Washington State Bar Ass'n v. Washington Ass'n of Realtors*, 41 Wash.2d 697, 712, 251 P.2d 619 (1952) (Donworth, J., concurring)).
>
> When a person holds himself out to the public as competent to exercise legal judgment, he implicitly represents that he has the technical competence to analyze legal problems and the requisite character qualifications to act in a representative capacity. When such representations are made by persons not adequately trained or regulated, the dangers to the public are manifest.... *Mazzacaro*, 465 Pa. at 551, 351 A.2d at 232. As the *Mazzacaro* court noted, a client may entrust confidences, repu-

tation, property, or freedom when he or she entrusts a legal matter to a person practicing law. 465 Pa. at 551, 351 A.2d at 232. The person receiving that trust should be subject to the regulations imposed on lawyers.

*State v. Hunt*, 75 Wash.App. 795, 803, 880 P.2d 96, 100 (Wash.Ct.App. Division 2nd 1994).

The Court's conclusion that Monroe engaged in the unauthorized practice of law in these and other cases is corroborated by the testimony of Monroe's own witness, Amy Hallock, who testified that Monroe provided legal services for Hallock in both her bankruptcy and her divorce.[11]

In Erwins' case, the Debtors found it necessary to engage the services of an attorney, Leatzow, to correct the errors and omissions in their Schedules and Statements prepared by Monroe. This demonstrates why the unauthorized practice of law is prohibited to protect the public. *Id.* The Court may act to prevent such unauthorized practice of law in bankruptcy cases. A litigant has an inalienable right to represent himself, but has no right to demand representation by a nonlawyer. *State v. Barnes*, 232 Mont. 405, 410, 758 P.2d 264, 267 (1988). This Court is not required to permit a debtor to be represented by a nonlawyer practicing law such as Monroe. *Id.*

The penalty for practicing law in Montana without a license is found at Mont.Code Ann. § 37–61–210: "If any person practices law in any court, except a justice's court or a city court, without having received a license as attorney and counselor, he is guilty of a contempt of court." Injunctive relief is also available, specifically under section 110(j) of the Bankruptcy Code.

### III. Injunction.

Injunctions are employed to suppress the unauthorized practice of law. *In re Kaitangian*, 218 B.R. at 114–15; *See also 7 AmJur.2d* Attorneys at Law § 135 (2nd ed.1997). What is of further concern to the

---

11. On direct examination of Amy Hallock by the Defendant, Monroe asked her: Q: "Okay. Amy, have I ever done any legal services for you?" A: "Yes" Q: "At anytime. Could you tell the courts what that was"? A: "Yes. You prepared my divorce and my bankruptcy."

Court, and which justifies a permanent injunction against Monroe from acting as a bankruptcy petition preparer or participating in preparing pleadings or documents in this Court ever again, is her attempts to persuade her clients to misstate the facts and conceal her unauthorized practice of law "[a]s far as the Court's [sic] are concerned."

Exhibit 8, B, and C show that Monroe provided Erwins and Ellingson with a list of exemption statutes and an explanation of their effect, and advised the Debtor to misrepresent their source to the Court because "my program does this automatically". Monroe asked Erwins and Ellingson to tell the Court that they went over the exemption codes and assert that they "personally told me which codes to use", when it was Monroe who provided the exemption statutes to the Debtors and explained their effect. Monroe would not even give Exhibit 2 to Erwins until Chasity falsely wrote on Exhibit 2 that she gave Monroe the exemption codes she wanted used. In fact, Chasity did not at the time, and still does not, understand exemptions. The Debtors obtained the list of exemption statutes from Monroe, who then applied them to the Debtors' property in the Schedules which she generated for them.

Monroe offered Exhibit 9, dated September 9, 1998, in which Ellingson obligingly states "Connie Monroe did go over exemption codes with me in her office on April 22, 1998.... If [McKay] would of said exemption codes I would of known what he was talking about & I would have told him that Connie & I went over the codes." However, simply by "going over the codes" with and providing Ellingson with the list of exemption statutes for the purpose of preparing bankruptcy schedules, and by explaining their effect, Monroe engaged in the unauthorized practice of law. *In re Agyekum*, 225 B.R. at 702; *Herren*, 138 B.R. at 994.

This Court cannot ignore or tolerate the serious impact on this Court's ability to function if debtors are encouraged to be less than truthful to the Court in order to conceal violations of the law. Anything less than full compliance with the disclosure requirements of the Bankruptcy Code and Rules seriously interferes with the proper administration of the Bankruptcy Code in bankruptcy cases filed in this District.[12] The Court finds that Monroe engaged in the unauthorized practice of law in the bankruptcy cases of Erwins and Ellingson, filed false disclosures of her fees in Erwins' case, and encouraged Chasity Erwin and Ellingson to make false statements to the Court regarding the source of exemptions in order to conceal Monroe's unauthorized practice of law. The Court finds Monroe's actions seriously interfere with this Court's proper administration of the Bankruptcy Code.

Injunctive relief is available to the U.S. Trustee under 11 U.S.C. § 110(j). *In re Kaitangian*, 218 B.R. at 117–18. Section 110(j) provides:

(j)(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

(2)(A) In an action under paragraph (1), if the court finds that—

(i) a bankruptcy petition preparer has—

(I) engaged in conduct in violation of this section or of any provision of this title a violation of which subjects a person to criminal penalty;

(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or

(III) engaged in any other fraudulent, unfair, or deceptive conduct; and

---

12. If an attorney acted in the same manner as Monroe, that person would be guilty of ghost-writing, which is described as the act of an undisclosed attorney who assists a self-represented litigant by drafting his or her pleadings as part of "unbundled" or limited legal services.

Ghost writing is violative of Court rules, particularly Rule 11, Fed.R.Civ.P. and ABA Standing Committee Opinion 1414 (1978) in Ethics and Professional Responsibility. *Johnson v. Bd. of County Commissioners for the County of Fremont*, 868 F.Supp. 1226, 1231–32 (D.Colo.1994).

(ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, or has not paid a penalty imposed under this section, the court may enjoin the person from acting as a bankruptcy petition preparer.

The Court finds that the Plaintiff has satisfied his burden of proof under Rule 7065 of demonstrating to the Court why an injunction should be issued. *In re Porro*, 10 Mont. B.R. at 346. Pursuant to § 110(j), Monroe shall be enjoined from acting as a bankruptcy petition preparer or otherwise engaging in advising debtors regarding the preparation or filing of bankruptcy petitions, schedules, statements, or other documents on behalf of any other person or entity in this Court.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) concerning the administration of bankruptcy estates.

3. The Defendant Connie L. Monroe engaged in the unauthorized practice of law in violation of Mont.Code Ann. § 37–61–201 and 11 U.S.C. § 110(h)(1) by soliciting financial information from Debtors, advising them and providing them lists of exemption statutes in preparation of their filing for bankruptcy relief, and preparing Chapter 7 petitions, Schedules and Statements on their behalf for filing in this District.

4. The Defendant violated her obligations under F.R.B.P. 1006(b)(3) and § 110(h)(1) by receiving her fee from Erwins before their filing fee was paid in full by installments; and the Defendant violated her obligations under §§ 110(h)(1) by falsely declaring in her disclosure of fees received, and in the application to pay filing fees in installments, that she did not receive her fee prior to the filing of Erwins' petition in Case No. 98–52815–7.

5. The Plaintiff has satisfied his burden under Rule 7065 of showing that Monroe engaged in the unauthorized practice of law in the bankruptcy cases of Erwins and Ellingson, filed false disclosures of her fees in Erwins' case, and encouraged Chasity Erwin and Ellingson to make false statements to the Court regarding the source of exemptions in order to conceal Monroe's unauthorized practice of law.

6. Monroe's actions seriously interfere with this Court's proper administration of the Bankruptcy Code, and Monroe should be permanently enjoined under § 110(j)(2) and (3) from acting as a bankruptcy petition preparer, from soliciting financial information from Debtors and from advising them and providing them lists of exemption statutes in preparation of their filing for bankruptcy relief, and from preparing Chapter 7 petitions, Schedules and Statements for filing in this District.

IT IS ORDERED the Defendant's motion to dismiss, filed December 28, 1998, is denied.

IT IS FURTHER ORDERED Judgment shall be entered against the Defendant Connie L. Monroe; and Monroe is enjoined from acting as a bankruptcy petition preparer or advertising as a bankruptcy preparer or typist for bankruptcy filers, from soliciting financial information from debtors and from advising them and providing them lists of exemption statutes in preparation of their filing for bankruptcy relief, and from preparing Chapter 7 petitions, Schedules and Statements for filing in the United States Bankruptcy Court for the District of Montana.

IT IS FURTHER ORDERED the Clerk of the Bankruptcy Court shall not accept for filing any petitions, Schedules, Statements or other documents which show on their face that Connie L. Monroe has prepared or participated in preparing them on behalf of any other person or entity.