**In re Jean Marie PERKINS, Debtor.**

**Bankruptcy No. 98–12843–7.**

United States Bankruptcy Court,
D. Montana,
Butte Division.

Feb. 16, 2000.

Joseph V. Womack, Waller & Womack, P.C., Billings, for Chapter 7 Trustee.

Daniel P. McKay, Office of the U.S. Trustee, Great Falls, for U.S. Trustee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW and ORDER

RALPH B. KIRSCHER, Chief Judge.

In this Chapter 7 bankruptcy, after due notice, hearing was held January 6, 2000, at Billings on the Application to Pay Professional Fees and Costs filed by Joseph V. Womack, who is serving as both the Chapter 7 Trustee and counsel for the Trustee. Mr. Womack seeks an award of fees in the sum of $84.00 pursuant to 11 U.S.C. § 330.[1] In response to Mr. Womack's fee request, the U.S. Trustee, through counsel, filed, pursuant to 28 U.S.C. § 586(a)(3)(A), "Comments of U.S. Trustee on Application to Pay Professional Fees" on December 27, 1999, prompting the Court to set the fee request for hearing in hopes of clarifying a very unclear area of the law, at least in this jurisdiction.

### JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, and venue is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) concerning the administration of bankruptcy estates. This Order contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

### BACKGROUND

Debtor commenced this case on October 2, 1998, by filing a voluntary Chapter 7 bankruptcy petition, and Mr. Womack was appointed Interim Trustee of the estate on October 6, 1998. The § 341(a) first meeting of creditors was held November 16, 1998, and thereafter, Mr. Womack became the Trustee.

On January 25, 1999, Mr. Womack, as Trustee, filed a "Petition to Serve as Attorney" requesting permission to appoint himself as attorney for the estate representing that "[s]ome assets may arise only because of the efforts of the Trustee, as attorney in adversary actions. As such, this Trustee wishes to employee himself as counsel, on a contingency fee basis for adversary actions and on an hourly basis for other legal work." An Order appointing the Trustee to serve as attorney was entered on January 25, 1999.

---

1. Unless otherwise indicated, all references to chapters, Sections and Rules are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and to the Federal Rules of Bankruptcy Procedure, Rules 1001, *et seq.*

Thereafter, on October 22, 1999, the Trustee filed an objection to the second Proof of Claim filed by Community 1st Federal Credit Union ("Community 1st FCU") arguing that the second claim appeared to be a duplicate of the first claim filed by Community 1st FCU. The objection was noticed for hearing. However, before the hearing was held, the Trustee filed a "Motion for Order Disallowing Second Proof of Claim dated February 2, 1999, of Community 1st Federal Credit Union" accompanied by a letter from the President and CEO of Community 1st FCU in which Community 1st FCU represented that it would withdraw its second Proof of Claim dated February 2, 1999. The Court granted the Trustee's motion, denying Community 1st FCU's second Proof of Claim. The Trustee, as attorney, has not taken any other action in this case and the record does not reflect that any assets have been recovered.

As a result of the above, the Trustee filed the instant fee request, seeking an award of fees and costs from the estate in the sum of $84.00 of which $24.00 is for drafting the objection, $36.00 is for drafting the motion and order to disallow Community 1st FCU's Proof of Claim, and $24.00 is for filing the instant fee request. Mr. Womack's request for fees was followed by the U.S. Trustee's comments on December 27, 1999. After due notice, a hearing was held January 6, 2000, at Billings, with Dan McKay of the U.S. Trustee's office and Mr. Womack appearing. No exhibits were introduced into evidence but both Mr. McKay and Mr. Womack presented their positions on this fee issue. The Court then took the matter under advisement and deems the matter ready for decision.

### APPLICABLE LAW

■ One of the most unpleasant judicial duties bankruptcy judges are called upon to perform involves reviewing fee applications submitted by professionals. *See American Benefit Life Ins. Co. v. Baddock* *(In the Matter of First Colonial Corp. of America)*, 544 F.2d 1291, 1301 (5th Cir. 1977) ("the determination of what constitutes reasonable compensation for services furnished by an attorney in a bankruptcy proceeding can be a distasteful task."), *reh'g denied,* 547 F.2d 573 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977) *(legislatively overruled on other grounds )*. The Court's task is especially unpleasant when the Trustee is permitted to serve not only as trustee but also as the attorney for the trustee, because in such instances, the Court is generally presented with two fee requests. The first by the trustee and the second by the trustee as attorney. The Court's task in such situations is to first evaluate the services performed by the trustee and trustee's attorney to ascertain whether such services involve typical trustee duties as set forth in 11 U.S.C. § 704. If the services performed do involve typical trustee duties, the amount of allowable compensation is determined in accordance with 11 U.S.C. § 330, as limited by § 326. If the services provided do not involve typical trustee duties, the trustee/attorney may then be entitled to compensation under § 330, subject to the limitations imposed by § 328.

■ As the Third Circuit Court of Appeals recognized, "[t]he line between legal and non-legal services and between necessary legal services and ministerial duties of the Trustee, requiring only sound business judgment, is not easy to draw." *In re Meade Land and Dev. Co., Inc.,* 527 F.2d 280, 285 (3rd Cir.1975) *(overturned on other grounds by the Bankruptcy Act of 1978 )*. Given the difficulties attendant with reviewing trustee/attorney fee requests, the burden is on the trustee/attorney to clearly demonstrate the legal nature of the work involved. *In re Air Vermont, Inc.,* 114 B.R. 48, 51 (Bankr.Vt.1988); *In re Gary Fairbanks, Inc.,* 111 B.R. 809, 811 (Bankr.N.D.Iowa 1990) ("The burden is on the trustee to demonstrate that services for which attorneys fees are sought are not

duties generally performed without the assistance of counsel."); *In re Smith,* 6 Mont. B.R. 231, 232, 109 B.R. 421 (Bankr. Mont.1988) (The Bankruptcy Court "must determine the nature and extent of the services provided with reference to the records submitted" so that the Court can explain the findings and reasons for the award.); *In re King,* 88 B.R. 768, 770 (Bankr.E.D.Va.1988) (requiring that the "demarcation between the trustee's services and the attorney's services be clear and distinct in the attorney's application, and that the specific subject matter and the nature of the problem that implicated legal services be apparent from the records."); *In re Wildman,* 72 B.R. 700, 708 (Bankr.N.D.Ill.1987) ("Most important, the burden of proof in all fee matters is on the applicant."). The court in *Air Vermont* explained:

> An application for fees should be self-contained, including enough information on its face to review the charges. *See, In re S.T.N. Enterprises, Inc., supra,* [70 B.R.] at 835. We should not be required to search the record and perform conjectural metaphysical exercises to discover the reason for the legal services. The burden is entirely on the attorney requesting compensation to demonstrate the professional compensation sought involves some necessary and actual legal service beyond the scope of the trustee's statutory duty.

*Air Vermont,* 114 B.R. at 51.

To differentiate between trustee and non-trustee duties, it is helpful to first examine § 704 of the Bankruptcy Code, which sets forth the functions a Chapter 7 Trustee is obligated to perform:

The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

In exchange for performing the aforementioned services, a trustee is entitled to the amount of compensation allowed under §§ 330(a) and 326(a). Section 330(a) provides:

(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (b), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

Once a court determines that a trustee's request for fees meets the requirements of § 330(a), the court must then determine whether the fee is within the limits imposed by § 326, which sets statutory limits on the amount of compensation a trustee may receive for performing the trustee's statutory duties:

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

Trustees should note that "[t]he compensation provisions of section 326 are outer limits on the amount of compensation that may be paid to a trustee and should not be viewed as an entitlement to the maximum fees specified. The amount of compensation allowed a trustee is subject to the discretion of the court in determining the reasonable value of the services provided to the estate by the trustee." 3 King et al., COLLIER ON BANKRUPTCY ¶ 326.02[1] at p. 326–4 (15th ed.1998) (footnote omitted).[2]

---

**2.** Trustees in Montana by and large receive the maximum compensation allowed by statute without having to comply with the requirements of § 330. If the trustee/attorneys continue to seek compensation for performing the trustee's duties, the Court may require trustees to file detailed fee applications for both the trustee's fees and the attorney's fees, at an undoubtedly increased burden and cost to the trustees. Such requirement, however, will assist the Court in differentiating between those services which are within the trustee's duties and those that require professional legal skills and expertise beyond the ordinary knowledge and skill of the trustee. In discussing this same issue, a bankruptcy court in Ohio wrote:

[I]t is the view of this Court that the difficulty of dealing with potential duplication is exacerbated by the lack of time records for services performed by the Trustee in this case and in cases administered by other

██ Pursuant to § 327(a), a trustee is authorized to employ professional persons, including attorneys. Section 327(d) permits the trustee to employ him or herself as a § 327(a) professional person provided such employment is in the best interests of the estate. A trustee, authorized to serve as a professional person under § 327(d) may seek compensation above and beyond the statutory limits set forth in § 326(a) provided ·the trustee's request for fees meets the requirements of § 330(a), as set forth above, and § 328. The distinction between the trustee and trustee/attorney, and their resulting compensation, is emphasized in § 328(b), which limits the amount of compensation a trustee/attorney may receive:

> (b) If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

11 U.S.C. § 328(b).[3] The interplay among the foregoing Code sections has sparked an abundance of case law in which courts have struggled to articulate a bright-line rule to aid courts and trustees alike in distinguishing between typical trustee's duties and those professional services for which compensation is allowable under § 330(a) and § 328. The distinction between the trustee's and the attorney's duties is important not only for preservation of the estate but it also furthers the bankruptcy courts' desire to adequately compensate professionals in the hopes of attracting competent individuals to the bankruptcy field. As Judge Merrill, in a

trustees in the Eastern Division. *See In re Vlachos*, [61 B.R. 473] at 480 [Bankr. S.D.Ohio 1986]. It has been stated:

> (A)n attorney-trustee petitioning for payment carries the responsibility of carefully discriminating between those services strictly legal in nature and those which inhere in the office of the trustee ... The very quality, however, which makes the attorney particularly qualified to act as trustee, unfortunately beclouds the matter of compensation. *In re Red Cross Hospital Assoc., Inc.*, 18 B.R. 593, 594 (Bankr. W.D.Ky.1982) cited in *In re Vlachos* at 480–81.

To remedy this problem, this Court intends to follow the approach of Judge Waldron in the *Vlachos* case and require, where the trustee and attorney for trustee are the same, that an itemized statement of the trustee services performed be submitted along with the itemized statement of the attorney. *In re Vlachos*, at 481.

*In re Dorn*, 167 B.R. 860, 868–69 (Bankr. S.D.Ohio 1994). *See also, In·re Kusler*, 224 B.R. at 187 (Holding that it is particularly helpful when trustee's "account for their time spent performing the duties of trustee, showing the same on their fee applications while noting that no compensation other than the statutory trustee's fee is being sought. Such a listing is of great assistance to the Court as it reviews fee applications. It gives the Court a

broader view of the history of the case and allows the Court to clearly observe the demarcation between Trustee's duties performed and professional services rendered.").

**3.** The House Report on § 328(b) affirms that the purpose of the provision allowing trustees to employ themselves is to reduce administrative costs. As noted in the House Report:

> Subsection (b) limits a trustee that has been authorized to serve as his own counsel to only one fee for each service. The purpose of permitting the trustee to serve as his own counsel is to reduce costs. It is not included to provide the trustee with a bonus by permitting him to receive two fees for the same service or to avoid the maxima fixed in [11 U.S.C.] section 326. Thus, this subsection requires the court to differentiate between the trustee's services as trustee, and his services as trustee's counsel, and to fix compensation accordingly. Services that a trustee normally performs for an estate without assistance of counsel are to be compensated under the limits fixed in section 326. Only services that he performs that are normally performed by trustee's counsel may be compensated under the maxima imposed by this section.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 329 (1977), U.S.Code Cong. & Admin. News pp. 5963, 6285. *See also, In re Whitney*, 27 B.R. 352, 353–54 (Bankr.Me.1983).

dissenting opinion, recognized some time ago:

> [A] balance must be struck between two competing interests: that the cost of bankruptcy should not itself consume the very res the proceedings are designed to protect; and that fees allowed be such as not to discourage competent counsel from active and effective participation.

*Jacobowitz v. Double Seven Corp.*, 378 F.2d 405, 409 (9th Cir.1967). *See also, In re McKenna*, 93 B.R. 238, 243 (Bankr. E.D.Cal.1988) ("Economic incentives for trustees are important factors in attracting able persons to serve as trustees.").

Frustrated in their endeavors to develop a bright-line rule, while at the same time striking a balance between competing interests, courts have developed generalized guidelines to assist trustees who serve as their own counsel. As one court noted, however:

> [W]hile generalizations are dangerous, they are the best we can do in an area in which it is difficult to categorize every potential activity as either statutory services to be performed by the trustee or legal services appropriately carried out by an attorney designated to assist the trustee.

*In re Lowery*, 215 B.R. 140, 142 (Bankr. N.D.Ohio 1997). *See also, In re Leslie*, 211 B.R. 1016, 1018 (Bankr.M.D.Fla.1997) ("given the difficult tasks a Chapter 7 trustee performs, such a black and white demarcation is simply not possible.").

■■■ One generalization this Court finds particularly instructive was posited by a Florida bankruptcy court:

> In general, professional time is limited to those tasks performed while repre-

senting the trustee in the prosecution of contested matters and adversary proceedings, attendance at court hearings in the capacity of attorney or other professional when the trustee has an interest, the preparation of professional related applications, and the performance of other specialized services that cannot be performed practically or lawfully by the trustee without engaging the services of a professional.

*In re Holub*, 129 B.R. 293, 296 (Bankr. M.D.Fla.1991). This generalization has been widely accepted and today, is adopted by this Court as the initial inquiry to be made when evaluating trustee/attorney fee requests. *See Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434, 458 (D.Utah 1998); *In re Kusler*, 224 B.R. 180, 186 (Bankr. N.D.Okla.1998); *In re Butterbaugh*, 135 B.R. 507, 509 (Bankr.N.D.Ohio 1991). Under the *Holub* inquiry, if a service performed by a trustee/attorney pertains to an adversary proceeding, such as filing a complaint to obtain the denial of a debtor's discharge, or a contested motion[4] where the trustee is required to appear and prosecute or defend, then the trustee would be entitled to compensation above the § 326 statutory limit. Such services would undoubtedly require the exercise of "professional legal skills and expertise beyond the ordinary knowledge and skill of the trustee". *In re Air Vermont*, 114 B.R. at 50.

■■■ The applicability of the *Holub* standard ends, however, when a trustee engages in an activity which does not rise to the level of an adversary proceeding or a contested matter. For example, in the case *sub judice*, Mr. Womack seeks fees for filing an unopposed objection to a duplicative claim. Such activity, based upon a plain reading of § 704,[5] is clearly within

---

**4.** The term contested motion implies that there is opposition. For instance, a trustee may challenge a secured claim on the basis that a creditor did not properly perfect its secured claim. Under this scenario, the trustee would be required to analyze the claim to determine whether it met all the requirements of the U.C.C. Such challenge would clearly be

outside the trustee's ordinary duties and would require the assistance of counsel.

**5.** The Supreme Court advised in *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992), that in statutory interpretation:

the ambit of the trustee's duties, especially when one considers the fact that all Mr. Womack had to do was review the proofs of claims in this case. Any lay person engaging in such activity could have surmised the that the two claims were for the same obligation—no legal analysis was required. In fact, nothing more than the bald objection was required; Mr. Womack did not have to file a legal brief and was not required to appear in prosecution of his objection. Thus, the Court concludes that routine objections to claims which are unopposed and do not require legal analysis or a brief, fall within a trustee's duties and may not be compensated as professional services. *In re Haggerty,* 215 B.R. 84, 86 (Bankr.M.D.Fla.1997) ("the making of routine objections to claims in this case constitutes performance of the trustee's duties, and is not compensable as professional time", but recognizing that an objection that "arguably involves a legal objection" may be allowed.); *In re Dorn,* 167 B.R. 860, 868 n. 12 (Bankr.S.D.Ohio 1994) ("Routine objections that will not be compensable as legal work include those based upon lack of documentation or duplication."). *See also, United States Trustee v. Porter, Wright, Morris & Arthur (In re J.W. Knapp Co.),* 930 F.2d 386, 388 (4th Cir.1991) ("We agree with the principle stated in these decisions to the effect that courts may not compensate an attorney for services statutorily required by the trustee. Only when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties, and only to the extent of matters requiring legal expertise."); *In re Butterbaugh,* 135 B.R. at 510 ("Allowing the trustee's counsel to be compensated for services which can and should be performed by the trustee not only depletes the estate unnecessarily, but violates the Code itself."); *In re King,* 88 B.R. at 771 ("[C]ounsel in the case at bar requested compensation for time spent... preparing notice of intent to sell debtor's property: ... preparing and filing objections to the creditors claims... etc. In view of the administrative nature of these services, we cannot approve the respective fees requested, as the services rendered were statutorily required of the trustee himself.").

■ As a bankruptcy court in Kentucky aptly noted:

[F]or the services of an attorney to be chargeable as a cost of administration, the attorney must "exercise professional legal skill and expertise beyond the ordinary knowledge and skill of the trustee", and the attorney cannot be compensated for the performance of the fiduciary duties of the trustee-client.

*In re Crutcher Transfer Line, Inc.* 20 B.R. 705, 711 (Bankr.W.D.Ky.1982). Another court observed, "[i]f a trustee needs an attorney to draft these documents [Initial Draft of Motion and Notice for Sale of Asset/Vehicle and Draft Order for same, Initial draft of notice to sell, and Review and revise Motion to Sell Vehicle].... One is left to ponder what duties, if any, a trustee can perform without the benefit of counsel." *In re Kusler,* 224 B.R. 180, 195 (Bankr.N.D.Okla.1998). *See also, United States v. Freeland (In re Spungen),* 168 B.R. 373, 377 (N.D.Ind.1993) ("if the Trustee can't perform the duties of a

---

[C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. *See, e.g., United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–242, 109 S.Ct. 1026, 1030–1031,

103 L.Ed.2d 290 (1989); *United States v. Goldenberg,* 168 U.S. 95, 102–103, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897); *Oneale v. Thornton,* 6 Cranch 53, 68, 3 L.Ed. 150 (1810). When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *see also Ron Pair Enterprises, supra,* 489 U.S., at 241, 109 S.Ct., at 1030.

Trustee with a modicum of proficiency, he is not authorized to be a Trustee.").

This leads the Court to the final inquiry regarding whether allowing trustees to file routine pleadings and motions constitutes the unauthorized practice of law. On this subject, the Ninth Circuit BAP advocates that: "[I]t is not so much who renders services but what sort of services are rendered that is the subject of inquiry." *Goudie v. Morrow (In re Telford)*, 36 B.R. 92 (9th Cir. BAP 1984). The Court agrees. Trustees are charged under the Bankruptcy Code with the responsibility of overseeing bankruptcy cases. Congress certainly contemplated that trustees would be performing activities which could conceivably be construed as the practice of law. However, as the U.S. Trustee states in his brief, the standards for qualifications of trustees are quite high. *See* 28 C.F.R. § 58.3(6).[6] Congress obviously took the trustee's qualifications into account when drafting the Bankruptcy Code and contemplated that these highly qualified individuals could and would perform the duties set forth in § 704, *i.e.*, conservation of estate assets for the benefit of creditors. *See In re Lowery*, 215 B.R. at 142 (A trustee has the skill and expertise to perform the duties set forth in § 704 "by virtue of being a member of the United States Trustee's panel of trustees.").

In addition, this Court's ruling today is in accord with the Court's prior ruling in *In re Ellingson*, 230 B.R. 426 (Bankr. Mont.1999), and the Honorable Paul G. Hatfield's ruling in *In re Flegler*, CV–91–113–GF (D.Mont.1993). In *In re Ellingson*, this Court enjoined a bankruptcy preparer from "acting as a bankruptcy petition preparer, from soliciting financial information from Debtors and from advising them and providing them lists of exemption statutes in preparation of their filing for bankruptcy relief, and from preparing Chapter 7 petitions, Schedules and Statements for filing in this District." 230 B.R. at 436. The Court specifically found that the petition preparer had falsified documents to the Court and had encouraged debtors to make false statements to this Court. The Court concluded, based upon such findings, that the petition preparer had seriously interfered with the proper administration of cases before this Court. The facts in *Ellingson* are quite different from the facts in the instant case. Bankruptcy petition preparers are not allowed by statute to engage in any activities that might be construed as the practice of law. This is in striking contrast to trustees who are expressly authorized by statute to perform some activities which could arguably be considered the practice of law, albeit, where no legal analysis or argument is required.

Rather, this case is similar to *In re Flegler*, where Judge Hatfield reversed an Order of this Court and held that the trustee in that case did not exceed his statutory duty when he filed an objection

---

**6.** Among other requirements, panel trustees must:

    (i) Be a member in good standing of the bar of the highest court of a state or of the District of Columbia; or

    (ii) Be a certified public accountant; or

    (iii) Hold a bachelor's degree from a full four-year course of study (or the equivalent) of an accredited college or university (accredited as described in part II, section III of Handbook X118 promulgated by the U.S. Office of Personnel Management) with a major in a business-related filed of study or at least 20 semester-hours of business-related courses; or hold a master's or doctoral degree in a business-related field of study from a college or university of the type described above; or

    (iv) Be a senior law student or candidate for a master's degree in business administration recommended by the relevant law school or business school dean and working under the direct supervision of:

        (A) A member of a law school faculty; or

        (B) A member of the panel of private trustees; or

        (C) A member of a program established by the local bar association to provide clinical experience to students; or

    (v) Have equivalent experience as deemed acceptable by the U.S. Trustee.

to a late filed proof of claim. Judge Hatfield based his ruling on the fact that no legal arguments were advanced in the objection and no legal expertise was required. The same is true for the instant objection.

Finally, the Court agrees that the denial of compensation for services rendered in the preparation of attorney's fees applications contravenes the spirit and letter of the Bankruptcy Code. *See Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985). However, when a trustee/attorney is not able to justify his or her request for fees, the time spent preparing the fee application associated with such fees must also be denied. In the case at bar, Mr. Womack has not justified his fees. Consequently, the time spent preparing the instant fee application must also be disallowed.

### CONCLUSION

In this case, Mr. Womack seeks fees for filing an objection to a duplicative claim. Mr. Womack did not advance any legal arguments in his objection. In addition, no legal expertise was required. Finally, Mr. Womack was not required to appear at a hearing to prosecute his objection. Thus, the filing of the routine objection falls within the purview of the Chapter 7 Trustee's duties as enumerated in § 704. As such, Mr. Womack is not entitled to fees beyond those allowed by statute.

IT IS THEREFORE ORDERED the Application to Pay Professional Fees and Costs filed by Joseph V. Womack on December 21, 1999, is denied.