**In re HOWARD LOVE PIPELINE SUPPLY COMPANY, Michael & Shirley Fentroy, Donnie & Annette Rainer, Debtors.**

**No. 97–12218.**

United States Bankruptcy Court,
E.D. Texas,
Beaumont Division.

Oct. 19, 2000.

[6.] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

Stephen J. Zayler, Lufkin, TX, for Applicant.

Timothy W. O'Neal, Assistant United States Trustee, Tyler, TX, for Office of United States Trustee, Region 6.

### MEMORANDUM OF DECISION REGARDING APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR TRUSTEE

BILL G. PARKER, Bankruptcy Judge.

These matters are before the Court upon consideration of the respective Applications for Compensation and Reimbursement of Expenses filed by Stephen Zayler (the "Trustee") in the above-referenced Chapter 7 cases. In each of these three cases, Mr. Zayler served not only as the duly-appointed case trustee, but he was also authorized by this Court, without objection, to serve as the attorney for the Trustee. The Office of the United States Trustee (the "UST") filed an objection to these three fee applications, claiming that they each improperly contained requests for attorney compensation for services which should be properly characterized as trustee duties. Because of the identity of issues, the Court consolidated its consideration of these matters.

### I. JURISDICTION

This Court has jurisdiction to consider the Applications pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has the authority to enter a final order regarding each of these contested matters since they constitute core proceedings as contemplated by 28 U.S.C. § 157(b)(2)(A), (B) and (O).

### II. FACTUAL AND PROCEDURAL BACKGROUND

#### A. Howard Love Pipeline Supply Co.

This case was initiated on December 1, 1997 as a Chapter 11 case. The case was subsequently converted to Chapter 7 on September 17, 1998 and Stephen Zayler was appointed as the interim trustee on that date. He became the permanent case trustee under the provisions of 11 U.S.C. § 702(d).[1] The Trustee later sought to employ himself as the attorney for the Trustee by application filed on September 24, 1998 and an order authorizing such employment was entered on November 3, 1998.

Upon the conversion of the case to Chapter 7, the Trustee immediately faced the challenge of overcoming the Debtor's poor accounting procedures and securing sufficient cash flow in order to complete certain work-in-progress begun by the Debtor–in–Possession. This necessitated the performance of substantial legal work to determine the breadth of the super-priority lien which had been granted to the Debtor's factoring company during the Chapter 11 phase of the case and which culminated in a net settlement to the Estate of $18,876.06. The Trustee also initiated an adversary proceeding against the

---

1. § 702(d) of the Bankruptcy Code provides that, if a trustee is not elected at the § 341 meeting of creditors, "then the interim trustee shall serve as trustee in the case."

Debtor's principals for unauthorized transfers which was settled for $26,576.64. The Trustee also prosecuted and ultimately settled an adversary proceeding to recover unauthorized post-petition payments made by the Debtor on pre-petition debts which returned $19,000.00 to the Estate.

In his "Application for Compensation and Reimbursement of Expenses Pursuant to 11 U.S.C. Section 330," the Trustee requests attorney compensation in the amount of $16,192.50, together with expense reimbursement in the amount of $850.19, for a total award of $17,042.69. The UST filed an objection to the full allowance of the compensation request, asserting that certain services enumerated in the attorney fee application, constituting $2,350.00 of the request, actually constituted trustee duties for which attorney compensation could not be properly awarded and for which the Trustee can only be compensated from his trustee commission, subject to the statutory restrictions of 11 U.S.C. § 326(a). Specifically, the UST objects to 9.60 attorney hours and .80 of paraprofessional hours contained in the fee application, consisting primarily of telephone conferences and correspondence relating to the various litigation matters. It also objects to any attorney compensation award for 3.60 attorney hours pertaining to the preparation and presentation of what it characterized as "routine" claim objections which it claimed required no legal analysis.

### B: *Fentroy*

This case was initiated by the filing of a joint voluntary petition under Chapter 7 on February 26, 1998. Mr. Zayler was appointed as the interim trustee and became the permanent case trustee pursuant to § 702(d). Following the § 341 meeting of creditors, the Trustee filed an application to employ himself as the attorney for the Trustee on July 8, 1998 and such an order was entered on August 13, 1998. The Trustee subsequently determined that the Debtors were retaining possession of certain funds which rightfully constituted property of the bankruptcy estate. Following the failure of the Debtors to tender the disputed sums, the Trustee was required to obtain an order directing the turnover of such funds. Upon the continued refusal of the Debtors to turnover the funds, the Trustee brought a contempt action against the Debtors in order to compel their compliance with the turnover order. The Trustee also reviewed the claims filed in the case and filed objections as appropriate.

For the rendition of legal services to this estate, the Trustee seeks attorney compensation in the amount of $1,012.50, together with expense reimbursement in the amount of $63.71, for a total requested award of $1,076.21. The objection of the UST to this request asserts that $245.00 of attorney compensation should be disallowed since they pertain to routine claim objections which should be properly characterized as a trustee duty.

### C. *Rainer*

This case arose from the filing of a joint voluntary petition under Chapter 7 on October 13, 1998. As the appointed trustee in this case, Mr. Zayler confirmed the availability of assets for distribution and subsequently obtained, through an application filed on July 1, 1999, an order employing himself as the attorney for the Trustee which was entered on July 13, 1999. The case administration in this case could be accurately described as routine and the legal services for which attorney compensation is sought by Mr. Zayler consist primarily of claim objections. For such services, the Trustee seeks attorney compensation in the amount of $720.00, together with expense reimbursement in the amount of $111.76, for a total of $831.76. The UST objects to $542.50 of the request, again asserting that services pertaining to routine claim objections constitute statutory duties which must be performed by the Trustee pursuant to § 704 of the Bankruptcy Code and that attorney compensa-

tion for such trustee services should be disallowed.

## III.  *DISCUSSION*

### A.  *Trustee Services vs.  Attorney Services.*

Under what circumstances may a Chapter 7 trustee also be awarded professional compensation as an attorney for services which are undoubtedly legal in nature, but which are closely related to the trustee duties enumerated under § 704 of the Bankruptcy Code? Despite the fact that almost every reported opinion on the subject acknowledges the difficulty in drawing a bright-line rule in this area, we have understandably grown accustomed to the ease of use afforded by bright-line rules and this Court is but the latest to be called upon to attempt to draw the proverbial "line in the sand" in this particular area. As an introduction, perhaps it would be useful to review the applicable sections of the Bankruptcy Code which make this such a difficult issue for courts.

§ 704 of the Bankruptcy Code imposes upon a Chapter 7 trustee the following duties:

1. collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

2. be accountable for all property received;

3. ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

4. investigate the financial affairs of the debtor;

5. if a purpose would be served, examine proofs of claim and object to the allowance of any claim that is improper;

6. if advisable, oppose the discharge of the debtor;

7. unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

8. if the business of the debtor is authorized to be operated, file with the Court, with the United States trustee, and with any governmental unit charged with the responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires;  and

9. make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

For the rendition of such trustee services, the trustee is entitled to reasonable compensation based upon the "actual, necessary services" rendered by such trustee.[2] However, notwithstanding the necessity of such services, the trustee's compensation is subject to a statutory limitation based upon the amount of actual distributions made by the trustee to creditors in the case.   In a case under chapter 7 or 11, trustee compensation is thereby limited to an amount

... not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.[3]

---

**2.**   11 U.S.C. § 330(a)

**3.**   11 U.S.C. § 326(a).   All parties should remember that this statute constitutes a maxi-

However, trustee compensation may not be the sole source of revenue in a case for an individual serving as trustee. A chapter 7 trustee may be authorized to retain professionals to provide assistance in the performance of the trustee's assigned duties [4] and, if the trustee happens to be a licensed attorney, the Bankruptcy Code specifically authorizes such a trustee to serve in a dual capacity as the attorney for the bankruptcy estate, hereafter referenced as a trustee-attorney, provided that "such authorization is in the best interest of the estate." [5] When the trustee-attorney applies for compensation for legal services rendered to the estate, such application is evaluated upon the basis of whether such legal services were actual and necessary and, significantly, there is no statutory limitation imposed upon the amount of compensation which may be awarded to the trustee-attorney in that context.

Thus, while the retention of the trustee in a dual capacity as attorney was primarily designed as a means by which to reduce the amount of administrative expenses incurred by a bankruptcy estate,[6] such dual retention also creates a potential vehicle by which the statutory limitation on trustee compensation might be effectively circumvented, thereby actually increasing the amount of administrative expenses, if the trustee-attorney is permitted to transform what otherwise would be characterized as trustee services into legal services.[7]

Notwithstanding the fact that § 328(b) of the Bankruptcy Code prohibits such an alchemy,[8] the jurisprudence in this area recognizes the difficulty in enforcing the § 328(b) prohibition without imposing unjustified restrictions upon the Code-sanctioned ability of the trustee-attorney to retain himself as an attorney and to receive reasonable compensation for profes-

mum ceiling on trustee compensation, not a minimum standard of compensation to which a trustee is automatically entitled. Although the Court will under appropriate circumstances reduce trustee compensation to an amount less than the maximum statutory amount, see *In re Stanley*, 120 B.R. 409 (Bankr.E.D.Tex.1990), the Court must also acknowledge that trustees in this district usually receive the maximum amount allowable under the § 326(a) calculations.

4. 11 U.S.C. § 327(a) provides that:
   [E]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

5. See 11 U.S.C. § 327(d) which permits such self-retention for accountant-trustees, as well as attorney-trustees.

6. The House Report regarding § 328(b) recites that "[t]he purpose of permitting the trustee to serve as his own counsel is to reduce costs." H.R. Rep. 95–595, 95th Cong., 1st Sess. 329 (1977), U.S. Cong. & Admin. News at p. 6285.

7. This potential problem was also recognized in the same House Report which emphasized

that the ability of the trustee to serve as his own counsel ...

   ... was not included to provide the trustee with a bonus by permitting him to receive two fees for the same service or to avoid the maxima fixed in section 326. Thus, this subsection [§ 328(b)] requires the court to differentiate between the trustee's services as trustee, and his services as trustee's counsel, and to fix compensation accordingly. Services that a trustee normally performs for an estate without the assistance of counsel are to be compensated under the limits fixed in section 326. Only services that he performs that are normally performed by trustee's counsel may be compensated under the maxima imposed by this section. *Id.*

8. § 328(b) of the Bankruptcy Code provides that:
   [i]f the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of any attorney or accountant for the estate.

sional legal services rendered for the benefit of a bankruptcy estate. *See, In re Perkins,* 244 B.R. 835, 840 (Bankr.D.Mont.2000)[acknowledging that "[t]he distinction between the trustee's and the attorney's duties is important not only for the preservation of the estate but it also furthers the bankruptcy courts' desire to adequately compensate professionals in the hopes of attracting competent individuals to the bankruptcy field."]; *In re Kusler,* 224 B.R. 180, 193 (Bankr.N.D.Okla. 1998)["By and large, retention of the trustee's own firm has been a very effective method of providing quality representation to the bankruptcy estates in this district."]; *In re Leslie,* 211 B.R. 1016, 1018 (Bankr. M.D.Fla.1997)[which stated, in rejecting an absolute demarcation in this area, that "[t]rustees know how to administer cases, should have the discretion to retain lawyers as needed, and should be judged based on their and their attorney's success, not an artificial and unworkable rule which limits the ability of a trustee to receive professional assistance."].

■ The benefit to retain oneself under § 327(d), however, is not without its burdens. The trustee-attorney must clearly demonstrate to the Court that "the services for which attorneys fees are sought are not duties generally performed without the assistance of counsel." *In re Gary Fairbanks, Inc.,* 111 B.R. 809, 811 (Bankr. N.D.Iowa 1990). The Court "should not be required to search the record and perform conjectural metaphysical exercises to discover the reason for the legal services." *In re Air Vermont, Inc.,* 114 B.R. 48, 51 (Bankr.D.Vt.1988). Instead, the demarcation between trustee services and attorney services must

> ... be clear and distinct in the attorney's application, and that the specific subject matter and nature of the problem that required legal services be apparent from the records. The burden rests on the attorney requesting compensation to justify the services rendered. Where insufficient explanatory

information is provided for determining the precise nature of the services rendered, the [C]ourt is compelled to determine that the services are not compensable as legal services.

*U.S. v. Freeland (In re Spungen),* 168 B.R. 373, 377 (N.D.Ind.1993) (citations omitted).

■ Though we impose that burden upon the trustee-attorney, the identification of a precise perimeter in a particular case can be difficult. An oft-cited characterization of the general boundary between trustee services and professional legal services is derived from *In re Holub,* 129 B.R. 293 (Bankr.M.D.Fla.1991)(J. Corcoran, presiding) in which the bankruptcy court observed that

> [i]n general, professional time is limited to those tasks performed while representing the trustee in the prosecution of contested matters and adversary proceedings, attendance at court hearings in the capacity of attorney or other professional when the trustee has an interest, the preparation of professional related applications, and the performance of other specialized services that cannot be performed practically or lawfully by the trustee without engaging the services of a professional.

To this Court the *Holub* standard provides a clear and reasonable demarcation of the parameters of those services which may be properly recognized as legal services rendered by a trustee acting as his own attorney and for which compensation may be paid to that trustee-attorney without regard to the § 326(a) limitation on trustee compensation. It has been specifically endorsed by many courts. *See, e.g., In re Kusler,* 224 B.R. 180, 186 (Bankr. N.D.Okla.1998); *In re Lowery,* 215 B.R. 140, 142 (Bankr.N.D.Ohio 1997); and *In re Polk,* 215 B.R. 250, 253 (Bankr.M.D.Fla. 1997)(J. Proctor, presiding)["The purpose of the attorney for the trustee is ... to provide assistance with those services the trustee is unable to perform due to the lack of a license to practice law."]. It is also consistent with other decisions on this

topic. *See, e.g., United States Trustee v. Porter, Wright, Morris & Arthur (In re J.W. Knapp Co.)*, 930 F.2d 386, 388 (4th Cir.1991)[citing with approval *In re Meade Land and Development Co.*, 527 F.2d 280 (3d Cir.1975) and its finding that "a court should consider whether the services could colorably constitute the type of services one would reasonably expect an attorney to perform under the circumstances"] and *In re Boltec Industries, Inc.*, 1993 WL 853018 (Bankr.E.D.Mich.1993)[finding that circumstances under which counsel "can be retained and ought to be paid ... [included] a situation where pleadings and/or court appearances are required"].

However, notwithstanding the apparent utility of the *Holub* standard, its widespread endorsement has not led to uniform results. Although the *Holub* court reached the conclusion that the preparation of employment applications, objections to claims,[9] notices of sale, and motions to sell property all constituted legal services for which attorney compensation could be properly awarded, other courts purportedly applying the same standard to the same services have reached opposite conclusions and denied attorney compensation for such services as a violation of § 328(b). *U.S. v. Freeland (In re Spungen)*, 168 B.R. at 377 [finding that the preparation of an application to employ is not compensable as a legal service]; *In re Kusler*, 224 B.R. at 187[finding that the drafting and revision of a motion to sell assets did not constitute a compensable legal service]. This seems to be particularly true in the area of claim objections. *See, In re Haggerty*, 215 B.R. 84, 86 [determining that "the making of routine objections to claims in this case constitutes performance of the trustee's duties, and is not compensable as professional time," citing *Holub* ]; and *In re Dorn*, 167 B.R. 860, 868, n. 12 (Bankr. S.D.Ohio 1994)[holding that "[r]outine objections that will not be compensable as legal work include those based upon lack of documentation or duplication."].

A comprehensive discussion regarding the proper characterization of claim objections is contained in *In re Perkins*, 244 B.R. 835 (Bankr.D.Mont.2000), in which the court determined that attorney compensation should not be awarded to a trustee-attorney for filing what was ultimately an unopposed objection to a duplicative claim. In the opinion of the *Perkins* court,

> [t]he applicability of the Holub standard ends, however, when a trustee engages in an activity which does not rise to the level of an adversary proceeding or a contested matter. For example, in the case sub judice, Mr. Womack seeks fees for filing an unopposed objection to a duplicative claim. Such activity, based upon a plain reading of § 704, is clearly within the ambit of the trustee's duties, especially when one considers the fact that all Mr. Womack had to do was review the proofs of claims in this case. Any lay person engaging in such activity should have surmised the (sic) that the two claims were for the same obligation—no legal analysis was required. In fact, nothing more than the bald objection was required; Mr. Womack did not have to file a legal brief and was not required to appear in prosecution of his objection. Thus, the Court concludes that routine objections to claims which are unopposed and do not require legal

---

**9.** Actually, in attempting to identify activities compensable only as trustee services, the *Holub* court attempted to distinguish between the preparation of what it denominated as "routine" claims objections from that of "legal" claims objections. It stated that

> ... [t]he preparation of objections to claims raising legal, as distinguished from routine, objections can be compensable to a professional. An example of a routine but not

legal objection is an objection for lack of documentation. A complex proof of claim, the examination of which may be compensable, might be a proof of claim asserting several kinds of priorities for different components of the claim as might be filed by an employee.

For reasons given below, this Court believes that drawing such a distinction violates the very standard which *Holub* seeks to employ.

analysis or a brief, fall within a trustee's duties and may not be compensated as professional services.

*Id.* at 842–43. (citations omitted).

■ While there certainly may have been local rules or procedures, which were not revealed by the opinion and of which this Court is not aware, which may have influenced the outcome in *Perkins,* this Court respectfully disagrees with its ultimate conclusion, as well as with those cases outlined above, upon which it relies. While an activity by a trustee which is preliminary to, and which does not actually trigger, an adversary proceeding or contested matter under the Code may be more properly characterized as a trustee duty rather than a legal service, the preparation and filing of a claims objection does not meet that description. A claim objection is a legal pleading which does, in fact, initiate a contested matter which must be resolved by the court [10] and which can even evolve into an adversary proceeding, depending upon the type of relief demanded in the objection.[11] While obviously circumstances often arise in which a trustee can and should conclude, without the necessity of legal analysis and the corresponding expense therefor, that the filing of a claim objection is required, it is nevertheless true that the actual filing of the pleading to initiate that contested matter for the benefit of the estate requires the rendition of a legal service. Further, the accuracy of that characterization is not dependent upon whether a response to the pleading is filed by the affected creditor or whether a hearing is ultimately conducted on the objection. In fact, a court appearance is mandated in many courts for every claim objection which is filed and, in those courts in which some type of negative notice procedure is utilized for claim objections, a party filing a claim objection will be unable to ascertain with certainty whether a court appearance will be required until the appropriate suspense period has expired.

Nevertheless, some courts apparently impose upon a trustee the duty to file "routine" claim objections and make court appearances on such matters without legal representation or, in the case of trustee-attorneys, without compensating the trustee-attorney for the rendition of legal services to the estate. Most root this burden in the language of § 704(5), which imposes upon the trustee the duty to "... examine proofs of claim and *object to* the allowance of any claim that is improper." (emphasis added).

■ However, the expressed duty of the trustee to object to improper claims does not authorize a non-attorney trustee to engage in the unauthorized practice of law. *In re Gary Fairbanks, Inc.,* 111 B.R. at 811 ["The function of an attorney for the trustee is to render to the estate services which cannot and should not properly be performed for compensation by one not licensed to practice law" (citations omitted) ]. Nor does § 704 otherwise relieve a trustee from an obligation to hire an attorney to fulfill this statutory duty. In re *Abraham,* 163 B.R. 772, 783 (Bankr.W.D.Tex.1994)[reminding us that "trustees are not attorneys (not even when it is an attorney functioning as the trustee)."] § 704 merely imposes upon the trustee the duty to pursue a claim objection on behalf of the estate. It does not require the trustee to file a pro se plead-

---

**10.** § 502(b) of the Bankruptcy Code provides that, if an objection to claim is made, "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States...." *See also,* 4 COLLIER ON BANKRUPTCY ¶ 502.02[2] at p. 502–11 (15th ed. rev.2000)["Once such an objection [to claim] is made, the determination of whether or not the objection is well founded is a judicial function to be exercised by the

Court."]; and ¶ 502.02[3][b] at p. 502–16 ["An objection to a claim is a contested matter within the meaning of Bankruptcy Rule 9014."].

**11.** Fed. R. Bankr.P. 3007 specifies that, "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding."

ing, nor does it require a trustee-attorney to forego the opportunity to receive reasonable compensation for actual and necessary legal services which are rendered to the estate. As recognized in a discussion of § 704 in the context of paraprofessional compensation in the *Abraham* case:

> [T]he principle (sic) question raised by this section of the Code [§ 704] ... is not so much what the duties are as it is the extent to which these duties may be permissibly delegated. At the outset, it is important to realize that delegation is the rule, not the exception, in chapter 7 administration, and that such delegation, far from being impermissible, is both essential to efficient case administration and, in the usual circumstance, raises no especial concerns for the court. Some examples may be helpful.

> One obligation of the trustee is to object to the debtor's discharge if appropriate. Assuming that it is, a lawsuit will immediately ensue, and the trustee is likely to hire a lawyer to press it (either herself or someone else). Is this an impermissible delegation? Of course not. It is a contemplated delegation. The same can be said of the duty to object to claims, to pursue preference actions, or to recover on lawsuits that are assets of the estate. The trustee is the party whose duty it is to take these actions, but, in the process of taking them, she hires professionals to do the actual work—professionals who of course must have a client in order to take action, and who must be answerable to that client for how the matter is handled, and on what terms the matter may be settled.

*Id.* at 777–78.

This is not to say that a trustee-attorney cannot forego compensation for "routine" claim objections or other minor legal matters. In many instances, trustees in this district will not request attorney compensation in a small asset case in order to insure that a distribution to creditors is realized.[12] If a trustee-attorney elects to forego attorney compensation for legal services rendered, that is his or her prerogative. However, neither § 704 nor § 328(b) can be legitimately construed to compel a trustee to engage in the unauthorized practice of law nor to compel a trustee-attorney to provide legal services for the benefit of the bankruptcy estate without compensation.

Contrary to the expressed concern of some courts,[13] this conclusion does not render § 328(b) superfluous nor does it sound the death knell to the distinction between a trustee duty and an authentic attorney service. There is a vast breadth of trustee services, the compensation for which has been and will continue to be subject to the § 326(a) statutory limitation.[14] The rendition of such a service is

---

12. Admittedly, the trustees administer cases with the knowledge that the United States Trustee will not tolerate nor will this Court sanction the administration of a case solely for the benefit of the trustee and estate professionals. *In re Arnold*, 176 B.R. 13, 15–16 (Bankr.E.D.Tex.1995) ["Bankruptcy proceedings are intended to benefit the creditors and the estate, and not to benefit the attorneys. Consequently, the Court cannot allow the assets of an estate to be totally absorbed by attorneys fees."]

13. *See, e.g., In re Kusler*, 224 B.R. at 195 [expressing a concern that allowing attorney compensation for the drafting of a notice of sale leaves one "to ponder what duties, if any, a trustee can perform in a Chapter 7 asset case without the benefit of counsel."].

14. A non-exhaustive list, as contained in the jurisprudence in this area, might include reviewing the debtor's schedules or its books and records, reviewing, investigating or preparing correspondence regarding the existence or scope of the debtor's assets or its business affairs, attending the § 341 meeting, making routine demands for estate property, conferencing with the debtor or its counsel, or other attorneys, collecting accounts receivable, advertising assets for sale, locating buyers for assets, attendance at asset auctions, arranging for insurance coverage, investing funds and maintaining records regarding such investments, corresponding with estate professionals, supervising bank transactions, reviewing claims, preparing correspondence regarding the documentation of claims, responding to creditor inquiries regarding case

not transposed into a legal service merely because the trustee has a law license. The burden of proof remains upon the trustee-attorney to demonstrate that any service for which attorney compensation is sought "cannot be performed practically or lawfully" except by an attorney, *In re Holub*, 129 B.R. at 296, and that the compensation standards of § 330 are satisfied. *In re Leslie*, 211 B.R. at 1019 ["By far, the most important considerations in reviewing applications submitted by attorneys for a Chapter 7 trustee are the nature and extent of services provided by the attorney and the value those services provided to the debtor's creditors and the estate." (citations omitted)]. To the extent that the trustee-attorney fails to demonstrate the necessity of the legal services or the description of such services improperly lumps legal and trustee services together, attorney compensation for those services will be disallowed.

### B. *Howard Love Pipeline Supply Co.*

■ In applying the foregoing principles to the fee application filed by Mr. Zayler in the Howard Love Pipeline case and in light of the evidence presented in support of that application, the Court finds that the following services enumerated in the fee application constitute the performance of trustee duties which cannot be properly compensated as attorney services:[15]

September 22, 1998—Receive and review Agreed Order for Adequate Protection and Modification of Stay of Secured Claim of Greentree Acceptance Corporation (SJZ—.20) [simple review of pleadings];

September 24, 1998—Review pleadings in Chapter 11 to determine case status; cash collateral order and automatic stay issues, etc. (SJZ—.20) [review of pleadings];

September 26, 1998—Receive and review Motion to Lift Stay filed by Associates Commercial Corporation on certain trucks and trailers and review of file (SJZ—.20) [review of pleadings];

October 5, 1998—Receive and review Response to Motion to Lift Stay filed by debtor through attorney, Steve Rutherford (SJZ—.10) [review of pleadings];

October 5, 1998—Telephone conference with Steve Rutherford, debtor's attorney, regarding case status and pending Motion to Lift Stay filed by Associates (SJZ—.10) [asset investigation]

October 6, 1998* *—Telephone conference with Edgar Colon, in-house attorney for Bechtel, regarding status of case and whether trucks still operating on Louisiana job and accounts receivable owed (SJZ—.30) [asset investigation];

October 6, 1998* *—Office conference with Robert Stokes and Howard Love to review post-petition payments, accounts receivable, accounts payable, factoring agreement, etc. involving Harvest Financial, Noram, Bechtel and AMS Staff Leasing (SJZ—2.70) [improper lumping of trustee asset investigation duties with possible legal services];

October 6, 1998* *—Telephone conference with Alfredo Perez, attorney for Bechtel Corp. regarding accounts receivable (SC—.20) [asset investigation];

October 7, 1998* *—Telephone conference with Garry Offerman, attorney for Greentree Acceptance Corporation, regarding request to pickup collateral since Trustee unable to make adequate protection payments (SJZ—.20) [asset disposition];

administration, working on trustee interim reports, testifying at court hearings, and preparing the trustee's final report. Some of these could possibly be compensated as legal services if related to a particular contested matter or adversary proceeding, but again the trustee-attorney has the burden of demonstrating the propriety of characterizing the services in that manner.

**15.** A double asterisk adjacent to the description indicates that the Office of United States Trustee has objected to attorney compensation for this service.

October 7, 1998—Review accounting records of debtor and documents provided by Noram and Harvest Financial to try to reconcile factoring arrangement and application of funds (SC—2.40) [asset investigation];

October 7, 1998—Telephone conference with Mitch Buchman, attorney for Associates, regarding withdrawing objection to Motion to Lift Stay (SJZ—.10)[creditor communication/asset disposition];

October 12, 1998—Receive and review proposed Order Lifting Stay from Mitch Buchman, attorney for Associates (SJZ—.10)[asset disposition];

October 14, 1998—Telephone conference with Mitch Buchman, attorney for Associates, regarding entry of Order Lifting Stay and desire to pickup collateral (SJZ—.10)[asset disposition];

October 14, 1998—Telephone conference with Garry Offerman, attorney for Greentree Acceptance, regarding question of existence of contract of sale on Greentree truck between debtor and H.O. Rithcie (sic?) (SJZ—.20)[asset investigation/disposition];

October 16, 1998—Receive and review debtor's withdrawal of objection to Motion to Lift Stay filed by Associates (SJZ—.10)[review of pleadings];

October 28, 1998—Telephone conference with Garry Offerman, attorney for Greentree, regarding consideration of Trustee's approval of waiver of right to notice on private sale of collateral (SJZ—.10)[asset disposition];

November 22, 1998—Review accounting records of debtor to determine amount of unauthorized post-petition payments to creditor, AMS Staff Leasing, on account of pre-petition debt for preparation of demand letter and adversary proceeding for turnover, if necessary (SJZ—2.80) [improper lumping of trustee asset investigation duties with possible legal services];

November 23, 1998* *Correspondence to Harvest Financial demanding turnover of $12,500.00 in authorized post-petition payments on pre-petition debt (SC—.40)[property demand];

November 23, 1998* *Correspondence to AMS Staff Leasing demanding turnover of unauthorized post-petition payments of $22,500.00 on account of prepetition debt (SJZ—.30)[property demand];

December 7, 1998—Receive and review debtor's attorney fee application and application for administrative allowance filed by Steve Rutherford (SJZ—.30)[review of pleading];

December 22, 1998—Receive and review U.S. Trustee's Objection to 1st Amended Application for Compensation to Debtor's Attorney (SJZ—.10)[review of pleadings];

December 23, 1998—Telephone conference with Garry Offerman, attorney for Commercial Bank, regarding stipulation on Motion to Lift Stay (SJZ -.10)[asset disposition];

January 4, 1999—Receive and review Application for Allowance of Administrative Claim filed by A & L Trucking (SJZ—.20)[review of pleading];

February 4, 1999—Receive and review Order Granting in Part and Denying in Part Application of Charles Gibbs, attorney for unsecured creditor committee in Chapter 11 case, for attorney fees (SJZ—.20)[review of pleading];

July 27, 1999—Receive and review proof of claim filed by San Jacinto County (SJZ—.20)[claim review/evaluation];

July 27, 1999—Search of San Jacinto County property records to compare to proof of claim filed by San Jacinto County and separate out corporation and individual property tax liabilities (SJZ—.60)[claim review/evaluation];

July 27, 1999—Telephone conference with R. Koster, attorney for San Jacinto County taxing authorities, regarding proof of claim for taxes and whether any of tax is administrative claim (SJZ—.20)[claim review/evaluation];

August 17, 1999* *—Research Court's file to try to determine amount and allowance of administrative claims (SJZ—.60)[claim review/evaluation];

August 17, 1999—Telephone conference with John Durkay, attorney for A & L Trucking, regarding administrative claim (SJZ—.20)[claim review/evaluation];

August 20, 1999* *—Receive and review Amended Application for Payment of Administrative Expenses filed by A & L Trucking (SJZ—.20)[review of pleading/claim];

September 27, 1999—Receive and review Order Granting Application for Payment of Chapter 11 Expenses filed by A & L Trucking (SJZ—.10)[review of pleading];

Accordingly, a reduction of 10.80 attorney hours and 3.00 paralegal hours as outlined in the Application is justified arising from services which are more properly characterized as trustee services.

■ In regard to the remaining objections of the United States Trustee (other than those relating to claim objections which are discussed below), the Court finds that those particular services, totaling 4.30 attorney hours and .20 hours of paralegal time, primarily pertain to correspondence and conferences regarding the development and ultimate settlement of the various pieces of litigation initiated by the Trustee against Harvest Financial, Noram and AMS Staff Leasing. The Trustee has satisfied his burden to demonstrate that those services, at the time they were rendered, were sufficiently related to the continued prosecution of those respective causes of action so as to justify an award of attorney compensation for the rendition of those services.

■ The Trustee also seeks attorney compensation for services pertaining to claims review and evaluation. While this Court has concluded that the preparation and prosecution of a claims objection by a trustee-attorney is compensable as a legal service, that characterization cannot be expanded to encompass every activity by the trustee-attorney regarding claims. An evaluation of a claim by the trustee, including any routine consultation with a creditor, should usually be denominated as a trustee duty, in the absence of specific evidence that the service could not have been practically or lawfully performed by a non-attorney. After a contested matter or adversary proceeding regarding the legitimacy of such claim has been initiated, the burden upon the trustee-attorney to demonstrate the necessity of a legal service becomes more easily satisfied. Thus, the Court finds that, based upon the evidence presented, attorney compensation must be denied for the following services:

December 14, 1999—Review sixty-two (62) claim objections for legal sufficiency (SJZ—3.60);

December 15, 1999—Telephone conference with Charles Gibbs, attorney for creditor, regarding questions on calculation of interest on judgment claims (SJZ—.10);

December 15, 1999—Telephone conference with Garry Offerman, attorney for Greentree Acceptance, regarding questions on proof of claim # 36 and whether deficiency balance claim is to be filed (SJZ—.20).

■ Aside from the proper characterization of services, the Court has also reviewed the Trustee's application under the standards of § 330 of the Bankruptcy Code to determine whether the remaining services and expenses as outlined in the Trustee's application were actual, reasonable and necessary in representing the interests of the bankruptcy estate. The Court finds that a reduction of 2.90 attorney hours is justified for excessive time having been billed for the work described, including a deduction of 1.80 hours for the preparation of seventeen (17) claims objections on December 22, 1999. The Court also finds that a reduction of .90 paralegal hours is warranted for charges made for clerical-type services which are more prop-

erly characterized as an overhead item. The Court further finds that the requested expense reimbursements were actual, reasonable and necessary to the rendition of the legal services by the Trustee and should be allowed in full.

### C. *Fentroy and Rainer.*

With regard to Trustee's respective applications for attorney compensation in the Fentroy and Rainer cases, the objections of the United States Trustee were solely based upon the premise that services pertaining to "routine" claim objections constituted trustee duties which could never be compensated as a legal service. Based upon the foregoing discussion, the UST objections are overruled. However, the Court has again reviewed these two applications under the standards of § 330 of the Bankruptcy Code.

In Fentroy, the Court finds that a reduction of 1.10 attorney hours is justified in that the preparation of the Trustee's request for production of documents is more properly characterized as a trustee duty. An additional reduction of .20 attorney hours is warranted for excessive time having been billed for the preparation of the four claim objections in that case. The Court further finds that a reduction of .90 paralegal hours is warranted for excessive time having been billed for the preparation of the fee application, as well as a reduction of .30 paralegal hours for charges made for clerical-type services which are more properly characterized as an overhead item. The requested expense reimbursements were actual, reasonable and necessary to the rendition of the legal services by the Trustee and should be allowed in full.

As for the Rainer case, the Court finds that a reduction of .80 attorney hours is justified in that the Trustee's initial review of claims is more properly charac-

terized as a trustee duty. An additional .80–hour deduction is warranted for excessive time having been billed for the preparation of the six claims objections in the case, as well as a .10 reduction for the Trustee's review of the fee application. The Court also finds that a reduction of 1.10 paralegal hours is warranted for excessive time having been billed for the services outlined and that a reduction of .30 paralegal hours is necessary for charges made for clerical-type services which are more properly characterized as an overhead item. The requested expense reimbursements should be allowed in full.

### IV. *CONCLUSION*

Based upon the foregoing, this Court concludes that Stephen J. Zayler, as attorney for the Trustee of the Bankruptcy Estate of Howard Love Pipeline Supply Company, should be awarded the sum of $12,917.50 as reasonable compensation for actual and necessary legal services rendered to that bankruptcy estate, together with reimbursement for actual and necessary expenses in the amount of $850.19, for a total award of $13,767.69. In the Fentroy case, the Court concludes that Mr. Zayler, as attorney for the trustee, should be awarded the sum of $725.00 as reasonable compensation for actual and necessary legal services rendered to that bankruptcy estate, together with reimbursement for actual and necessary expenses in the amount of $63.71, for a total award of $788.71. Finally, as to the Rainer case, Mr. Zayler is entitled to an award of $352.50 as reasonable compensation for actual and necessary legal services rendered to the Rainer bankruptcy estate, together with expense reimbursements of $111.76, for a total award of $464.26.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law [16] pursuant to Fed.R.Civ.P.

---

**16.** To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional

52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr.P. 7052 and 9014. A separate order will be entered in each case which is consistent with this opinion.