**In re COLONIAL REALTY COMPANY, Jonathan Googel, Benjamin Sisti, Consolidated Debtors.**

**No. 90–21980.**

United States Bankruptcy Court, D. Connecticut.

June 27, 2002.

Christopher R. Belmonte, Satterlee, Stephens, Burke & Burke, LLP, New York City, for Unsecured Creditors' Committee.

Hal M. Hirsch, Gainsburgh & Hirsch, LLP, Fulbright & Jaworski, LLP, New York City, Applicant.

Patricia Beary, Assistant U.S. Trustee, Carol A. Felicetta, Office of U.S. Trustee for District of Connecticut, New Haven, CT, Movant.

### RULING ON FEE APPLICATION AND MOTION SEEKING DISGORGEMENT OF FEES

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

#### I.

Hal M. Hirsch ("Hirsch"), on April 18, 2002, filed a final report as trustee of the consolidated Chapter 7 estates of Colonial Realty Company, Jonathan Googel and

300

Benjamin Sisti ("the consolidated estates"), some 12 years following the filing of the 1990 involuntary petitions which commenced these cases. Hirsch became the Chapter 7 trustee, and his law firm, Gainsburgh & Hirsch, LLP ("G & H"), became attorneys for the trustee in May 1991. Hirsch represents that during his trusteeship he distributed to creditors, secured and unsecured, approximately $130,000,000 and commenced over 2,000 adversary proceedings. As trustee, Hirsch periodically received commissions[1] totaling approximately $1,100,000 and G & H received legal fees of approximately $8,500,000. For most of the consolidated estates' existence, Christopher R. Belmonte ("Belmonte"), as attorney for the unsecured creditors' committee ("creditors' committee"), appointed pursuant to Bankruptcy Code § 705,[2] and the United States Trustee ("UST") have been of valuable assistance to the court in presenting informative positions during the countless hearings held on fee applications and other matters. Hirsch originally filed his final report in January 2001. The latest modified final report, filed April 18, 2002, to which no objection has been received, reflects changes to the report required by the UST.

Before the court is G & H's application for (1) final approval of interim compensa-

tion paid for period May 24, 1991 through March 31, 1997; (2) legal fees of $19,546.64 and expenses of $204.79 for the period from October 1, 2001 through February 28, 2002; and (3) $40,000 as a reserve for future legal fees. The creditors' committee, after securing G & H's consent to (1) reduce the fee request to $17,013.88 (plus $204.79 in disbursements) and (2) reduce the requested fee reserve to $20,000, supports the granting of G & H's application. The UST not only opposes the fee application for the period from October 1, 2001 through February 28, 2002 in its entirety, but has filed a motion seeking disgorgement of fees from G & H in the amount of $255,855 for the period of April 1997 through September 2002. Both UST's objection to G & H's application and UST's motion contend that the services rendered by G & H in the stated amounts were essentially trustee duties for which G & H is not entitled to compensation.[3] Hearings on the application and motion concluded on June 13, 2002.

II.

A.

*The June 4, 1997 Order*

The court, on June 4, 1997, had entered an Order ("the Order"), agreed to and

---

**1.** Bankruptcy Code § 326(a) limits Chapter 7 trustees' maximum reasonable compensation to certain percentages of monies turned over "by the trustee to parties in interest."

**2.** Bankruptcy Code § 705 provides:
(a) At the meeting under section 341(a) of this title, creditors that may vote for a trustee under section 702(a) of this title may elect a committee of not fewer than three, and not more than 11, creditors, each of whom holds an allowable unsecured claim of a kind entitled to distribution under section 726(a)(2) of this title.
(b) A committee elected under subsection (a) of this section may consult with the trustee or the United States trustee in con-

nection with the administration of the estate, make recommendations to the trustee or the United States trustee respecting the performance of the trustee's duties, and submit to the court or the United States trustee any question affecting the administration of the estate.

**3.** UST's motion also contends that G & H charged excessive fees in preparing its fee applications. *See* Bankruptcy Code § 330(a)(6) ("Any compensation awarded for the preparation of a fee application shall be based upon the level and skill reasonably required to prepare the application.").

presented to the court by Hirsch, G & H, the creditors' committee and the UST on G & H's motion, which established revised compensation terms for Hirsch and G & H going forward from April 1, 1997 to the conclusion of the consolidated estates. The Order which modified a court order entered on October 17, 1991, further resolved, under terms contained in the Order, a number of outstanding disputes, such as UST's objections to prior compensation requests and Hirsch and G & H's claims to fees, commissions and expense hold-backs. Under the Order, Hirsch waived all statutory trustee commissions subsequent to October 1996; G & H was to receive a contingent fee of 20 percent of recoveries in remaining matters to be litigated, and to receive fees on an hourly basis equal to 75 percent of its hourly rates for non-litigated matters, plus 75 percent reimbursement of its out-of-pocket disbursements and expenses. G & H was to continue to file monthly statements seeking compensation for non-litigation matters, as in the past, with procedures for objection to remain in effect.[4]

### B.

### The December 21, 2000 Hearing

The court, on December 21, 2000, held hearings on several fee applications, including one filed by G & H for $20,233, based upon hourly fees for the period of June 2000 through October 2000. After discussions between G & H and the creditors' committee, G & H reduced its request to $18,000. The UST had objected to the G & H fee application contending that G & H's services primarily dealt with trustee services such as preparing the final report,[5] and, thus, were not compensable. From the discussion that ensued at this hearing, it became clear that the parties differed on how to interpret the Order that they had drafted after months of negotiation. They conceded the Order was ambiguous on the issue of whether future trustee duties, such as preparing the final report, were to be fulfilled at no cost to the consolidated estates, were to be performed by G & H at its reduced hourly rate, or were to be compensated on some other basis.

Belmonte suggested to the court that in light of the ambiguity in the Order and G & H's fee application probably being tantamount to a final application, an $18,000 legal fee be approved. The UST noted that all experienced Chapter 7 trustees, such as Hirsch, were aware that preparing the final report was clearly a trustee's duty not separately compensated for, aside from the statutory commission. *See In re Howard Love Pipeline Supply Company*, 253 B.R. 781, 791 (Bankr.E.D.Tex.2000) (preparing the trustee's final report is a trustee service "the compensation for which has been and will continue to be subject to the § 326(a) statutory limitation."); *In re Dorn*, 167 B.R. 860, 867 (Bankr.S.D.Ohio 1994) ("The Court understands that the closing and final report process is necessarily detailed and time

---

4. Under the October 17, 1991 order, G & H filed detailed monthly compensation applications with the court, which applications were served on, among others, the creditors' committee and the UST. If no objections to the applications were filed within 10 days thereafter, Hirsch was authorized to pay G & H 75 percent of the amount sought. G & H was to apply every 120 days for a court order seeking approval of the compensation received.

5. Bankruptcy Code § 704, entitled "Duties of trustee," provides, in pertinent part:

The trustee shall—

. . .

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

consuming and subject to amendments; however, by statute the trustee and not any professional or paraprofessional retained or employed by the trustee is responsible for closing the case and filing final accounts."). The G & H attorney present (not Hirsch) stated that the trustee's final report would be filed in January 2001, and that nowhere in the Order was there a provision which indicated that the considerable work necessary to close the consolidated estates would be noncompensable. The court ruled that taking into account the unique history of the consolidated estates,[6] the conceded ambiguity in the Order, the claimed approaching closing of the consolidated estates, and the recommendation of the creditors' committee, a fee of $18,000 be approved.

### III.

### The June 13, 2002 Hearing

At the June 13, 2002 hearing the parties, in large part, repeated the arguments made at the December 21, 2000 hearing on both the G & H fee application and the UST motion for disgorgement. No party presented witnesses or sought the introduction of documents in support of their pleadings.

The UST requested that the court, in effect, reverse its conclusion reached at the December 21, 2000 hearing, deny the application and grant the motion. Belmonte argued, in accordance with a written statement he filed on behalf of the creditors' committee, that the creditors' committee believed UST's motion for disgorgement was unjustified. He stated

that the creditors' committee had reviewed all G & H monthly fee applications at the time each was filed, made objections where indicated, and, in most instances, achieved fee reductions to which G & H consented. As a party who negotiated the Order, Belmonte stated the services rendered by G & H and objected to by the UST should be compensable. Hirsch asserted the Order did not contemplate that necessary services to close the consolidated estates were not to be compensated. He emphasized the multi-million-dollar waiver of G & H hold-back fees achieved by the Order.

### IV.

### CONCLUSION

The court reaches the following conclusions after giving due consideration to the arguments made by the parties. At the December 21, 2000 hearing, the parties represented, and the court so understood, that the consolidated estates were about to close with Hirsch to file his final account within the following two weeks. He did so, but it took another 15 months before Hirsch and the UST ultimately agreed on the proper contents of the final report. Without allocating blame for this delay (there is no record to support any such conclusion) the court believes the creditors of the consolidated estates should not shoulder the cost of such delay. It clearly could not have been the intent of the Order to saddle the consolidated estates with the much larger cost of compensating G & H to perform trustee duties in return for Hirsch waiving the very modest trustee commission then foreseeable. Hirsch and

---

**6.** See In re Colonial Realty Company, 980 F.2d 125, 127 (2d Cir.1992) ("Colonial was involved in the formation and syndication of approximately sixty real estate limited partnerships throughout the United States.... Thousands of Colonial investors suffered significant losses with the Colonial collapse, and

claims filed by creditors total billions of dollars."); FDIC v. Colonial Realty Company, 966 F.2d 57, 58 (2d Cir.1992) ("[The consolidated estates] maintained ownership interests in at least 132 separate entities in at least 40 states.").

G & H, as resolved by the Order, were neither overpaid, as the UST intimates, nor underpaid for the work performed. G & H has abandoned any claim for a fee enhancement for its services.

The court denies G & H's application for $19,546.64 and expenses of $204.79. The court also denies the request for a reserve of $20,000 for future legal fees for which no basis was established. Hirsch will remain responsible for completing all trustee duties involved in the closing of the consolidated estates at his and G & H's non-compensable expense. G & H's application, as to the period May 24, 1991 through March 31, 1997, is approved. The court concludes that the UST motion for fee disgorgement by G & H is not sustainable for the reasons stated by the creditors' committee; G & H has not, in the overall, received excessive fees; the lack of an adequate record; and in light of all the described circumstances. It is

SO ORDERED.