## In re Robert STEVENS, Debtor.

### No. 03 B 00276.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

May 29, 2009.

David Grochocinski, Grochocinski and Grochocinski, Orland Park, IL, for Debtor.

**Memorandum Opinion (Fee Applications and Trustee's Final Report)**

BRUCE W. BLACK, Bankruptcy Judge.

The trustee in this chapter 7 asset case is seeking court approval of her final report. Included in that final report by reference are the final fee applications for the trustee, Deborah Kanner Ebner; the trustee's accountant, Lois West ("West"); the Law Offices of Deborah Kanner Ebner as general counsel to the trustee ("DKE"); Steven Troy as special counsel to the trustee ("Troy"); and Donald Johnson as gen-

eral and special counsel to the trustee ("Johnson").

■ Although no party objected to the fees requested by the trustee and the other professionals in this case, the court has a fundamental obligation to review these applications to ensure that the fees and expenses are reasonable and justified. *In re Wildman,* 72 B.R. 700, 705 (Bankr. N.D.Ill.1987). The court's initial review of the itemizations accompanying the applications raised concerns regarding duplication and reasonableness of the services provided by these professionals, as well as questions about the necessity of some of the services to the administration of the estate. Adhering to the recommendation of the Court of Appeals for the Seventh Circuit in *In re Bond,* 254 F.3d 669 (2001), the court expressed its concerns in open court and gave the trustee an opportunity to file a written response. The trustee's written response fails to ameliorate the court's concerns and, to the contrary, raises additional concerns regarding duplication of services.

### Jurisdiction

Jurisdiction lies pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue is proper under 28 U.S.C. § 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### Background

Robert Stevens filed his voluntary petition under chapter 7 of the Bankruptcy Code[1] on January 3, 2003. Subsequently, Deborah Kanner Ebner was appointed interim trustee of the estate and now serves as permanent trustee. The section 341 meeting of creditors was held, and the

trustee filed an Initial Report of Assets wherein she noted she had "found assets in this estate to be administered for the benefit of creditors...." (Dkt.# 15, ¶ 2).

On May 10, 2004, the trustee filed an "Application for Order Approving Employment of General and Special Counsel for the Trustee," DKE and Troy respectively. In the application, the trustee stated the basis for employing Troy stemmed from the debtor's testimony during the meeting of creditors which suggested possible fraudulent conveyances of property by the debtor. Troy was to be employed as the trustee's special litigation counsel for the purpose of litigating fraudulent conveyance and preference actions for the benefit of the estate. The trustee cited Troy's "substantial litigation experience" and stated his employment would be most "expeditious and cost-effective to the administration of this Estate." (Dkt.# 21, ¶ 5).

The application also sought to employ DKE as general bankruptcy counsel for the trustee to "prepare the pleadings required by the United States Bankruptcy Code." (Dkt.# 21, ¶ 7). Affidavits of disinterestedness of Troy, Ebner, and attorney Connie Lambert ("of counsel" to DKE) were filed with the application.

On May 14, 2004, an order was entered granting the trustee's application to employ Troy and DKE. Two months later, the trustee sought an order approving the employment of West as accountant and financial advisor citing West's "valuation expertise" and "ability in forensic accounting" as the basis for her employment. That order was entered on July 9, 2004. Troy, Johnson, DKE, West, and the trustee all performed services related to the debtor's only two assets, interests in two

---

**1.** 11 U.S.C. § 101 *ff.* Any reference to "section" or "the Code" is a reference to the Bankruptcy Code unless another reference is stated.

parcels of real estate in Wisconsin.[2] The liquidation of those assets generated $56,500.68 for the estate. The trustee's final report includes requests to approve the following fees:

- Trustee—$6,159.35 fees and $454.89 expenses
- West—$3,288.00 fees
- DKE—$22,507.50 fees
- Troy—$11,212.50 fees and $90.00 expenses
- Johnson—$40,000.00 fees

These requests total $83,167.35 in fees and $544.89 in expenses. Because these amounts substantially exceed the value of the assets received by the estate ($58,851.05) and because there is no proposed distribution to unsecured creditors, the court requested clarification from the trustee regarding duplication and necessity of services rendered by the professionals, and specifically by DKE.

It may be impossible to articulate a definitive line between the legally compensable duties of a trustee and those of a professional appointed to assist the trustee. Nevertheless, it is imperative that the court attempt to identify this line in each case in order to prevent depletion of estates and derogation of the principles underlying the Code. Such an attempt is especially important in a case like this where the only distributions are to the trustee and her hired professionals. *See In re King,* 88 B.R. 768, 770 (Bankr. E.D.Va.1988).

*Trustee Duties*

Section 704 details a trustee's statutory duties. Those duties include:

1. collecting and reducing to money the property of the estate,

2. accounting for all property received,

3. ensuring that the debtor performs his intention pursuant to section 521(2)(B),

4. investigating the financial affairs of the debtor,

5. examining proofs of claims, and objecting to any improper claims,

6. opposing the discharge of the debtor if appropriate,

7. furnishing information concerning the estate and its administration as requested by any party in interest,

8. filing periodic reports and summaries with proper government agencies if operating the debtor's business,

9. filing a final report and account with the court and the United States Trustee,

10. providing notice of the debtor's domestic support obligation claim, if appropriate,

11. performing the debtor's obligations as administrator of any employee benefit plan,

12. using reasonable and best efforts in the transfer of health care patients to an appropriate health care business when the debtor's health care

---

**2.** On December 8, 2006, the court entered an order approving the retention of Marc Bickford as special counsel to the trustee to handle the sale of one of the Wisconsin properties. Bickford's fee was a flat rate of $500.00 and was paid at closing and disclosed on the closing statement. The application to employ

Bickford slated that his services would include: "offering the Trustee necessary advice and counsel, preparing all documents necessary for the closing, and filing the necessary documents with the court and/or governmental agencies."

business is in the process of being closed.

11 U.S.C. § 704.

■ A trustee is presumed to be competent to perform all of the duties enumerated in section 704 and may not delegate those duties to others. *In re McKenna*, 93 B.R. 238, 241 (Bankr.E.D.Cal.1988); *In re Auto–Train Corp.*, 15 B.R. 160, 161 (Bankr.D.D.C.1981).

■ The duties listed in section 704 are not exhaustive. Bankruptcy case law reveals additional duties of a trustee that stem from the statutory duties of a trustee. These derivative duties also must be performed by the trustee and cannot constitute legal services compensable to a professional for the trustee. *McKenna* at 242. Such derivative duties include:

— Services relating to sale of the debtor's assets.

— Examination of the debtor's papers.

— Routine telephone calls and correspondence with information seekers.

— Preparing applications for employment of professionals.

— Acting as liaison with special counsel.

*Id.; see also King* at 770.

Furthermore, the United States Department of Justice has outlined trustees' duties that, at first glance, may not be apparent from the statutory language of the Code. This list of duties includes the supervising of professionals hired by the trustee. 2 U.S. DEP'T OF JUSTICE, UNITED STATES TRUSTEE MANUAL 71.

Notwithstanding a requirement that a trustee be competent to perform this broad array of duties, the Code authorizes the court to allow a trustee to employ professionals for assistance in specific circumstances.

### Statutory Framework

The statutory framework governing professional fees for trustees and trustees' professionals is relatively straightforward. To begin, section 321 provides that a person may only be a trustee if the person is "competent to perform the duties of a trustee."

Next, section 326, titled "Limitation on compensation of trustee," provides that "the court may allow reasonable compensation under section 330 ... of the trustee for the trustee's services ..." [on a varying percentage of] "all moneys disbursed or turned over in the case by the trustee to parties in interest ..." It is important to note that any fee awarded to the trustee is subject to the rules in section 330 and is a percentage of "moneys disbursed or turned over in the case,"

Section 327, titled "Employment of professional persons," provides in subsection (a) that, with court approval, the trustee "may employ ... attorneys ... or other professional persons ... to represent or assist the trustee in carrying out the trustee's duties ..." Subsection (d) expressly allows the court to authorize an attorney trustee "to act as attorney ... for the estate if such authorization is in the best interest of the estate."

Section 328 is titled "Limitation on compensation of professional persons," and subsection (b) specifically addresses trustees serving as attorneys for the estate. It says the court may allow fees for such services "only to the extent that the trustee performed services as attorney ... for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney ... for the estate."

Both trustee fees and trustee's attorneys fees are governed by section 330, which is titled "Compensation of officers." Subsec-

tion (a)(1) provides in pertinent part that "the court may award to a trustee ... or a professional person ... reasonable compensation for actual, necessary services ... and reimbursement for actual, necessary expenses." Subsection (2) expressly authorizes the court to "award compensation that is less than the amount of compensation that is requested." Subsection (3) requires the court to consider "all relevant factors" in determining "the amount of reasonable compensation to he awarded." Subsection (4) mandates that "the court shall not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not—(I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the estate."

### Issues

■ Given the statutory framework, the threshold issue, posed by section 328(b), is whether professional services performed by an attorney for the trustee were required to be performed by a lawyer or were instead within the scope of the trustee's duties. The trustee is obligated to perform all of the trustee's duties without compensation beyond the trustee's compensation set in section 326.

To the extent that services do require legal expertise beyond that of the ordinary trustee, four issues remain, all posed by section 330: (a) Is this request for reasonable compensation for actual, necessary services? (b) Were the services unnecessarily duplicative? (c) Were the services reasonably likely to benefit the estate? (d) Were the services necessary to the administration of the estate?

### Legal Standards

■ Generally, the burden is on the trustee to demonstrate that the services for which attorney's fees are sought were legal in nature and could not have been performed without the assistance of counsel or the section 327 professional. *In re Air Vermont, Inc.,* 114 B.R. 48, 50 (Bankr. D.Vt.1988); *In re Gary Fairbanks, Inc.,* 111 B.R. 809, 811 (Bankr.N.D.Iowa 1990). There is no bright line test to determine whether services are beyond the knowledge and skill of a trustee. *In re Perkins,* 244 B.R. 835, 841–42 (Bankr.D.Mont.2000). Many cases illustrate that a line can be drawn between legal and non-legal services based on the specific facts presented. *See In re NWFX, Inc.,* 267 B.R. 118, 228–29 (Bankr.W.D.Ark.2001) (performing ministerial chores, such as making phone calls and organizing files, are non-legal services); *In re Haggerty,* 215 B.R. 84, 86 (Bankr.M.D.Fla.1997) (making routine objections to claims which are unopposed and do not require legal analysis are services that fall within a trustee's duties under section 704 and may not be compensated as a professional for such services); *In re Kuhn,* 150 B.R. 825, 827 (Bankr.M.D.Fla. 1993) (reviewing correspondence, claims, and files that assist the trustee in fulfilling his statutory duty do not require the assistance of an attorney); *In re Holub,* 129 B.R. 293, 296 (Bankr.M.D.Fla.1991) (representing the trustee in the prosecution of legal matters and adversary proceedings, attending court hearings in the capacity of attorney, and preparing professional related applications are services a trustee cannot lawfully perform).

■ Clearly, the circumstances of each case dictate whether a particular service is legal or non-legal in nature, but as the Court of Appeals for the Third Circuit summarized, a court should consider whether the "services could colorably constitute the type of services one would reasonably expect an attorney to perform under the circumstances...." *In re Meade Land and Development,* 527 F.2d 280, 285 (3d Cir.1975).

■ Here the trustee employed her own law firm to represent the estate and also employed other lawyers not associated with her firm as special and general counsel to represent the estate. This situation leads to two different types of problems in evaluating the requests for compensation. The requested fees for Johnson and Troy are to be judged solely on the criteria in section 330. The requested fees for DKE must be judged by the criteria in section 330 and by the additional standard of section 328(b). A trustee who serves as her own attorney is required to keep track of the hours spent performing trustee services as well as legal services. *Perkins* at 838. In this case, the trustee properly filed an itemization of services performed as trustee to the estate, as well as an itemization for services performed by DKE as attorney for the trustee.

### The Trustee's Fee

The trustee reports that she devoted over 135 hours to this case, and she values that time in excess of $42,000, based on an hourly rate which rose from $285 at the beginning to $375 at the end. Under section 326, of course, those hours and rates are not determinative of the trustee's fee. Instead, her fee is to be based on a varying percentage of the money collected and turned over to parties in interest. The trustee bases her request for $6,15935 in trustee's fees on the recovery of $58,187.05 into the estate. The final report says "Receipts (See Exhibit C) 58,187.05." Exhibit C consists of two forms—"Form 1, Individual Estate Property Record and Report" and "Form 2, Cash Receipts and Disbursements Record." Neither form contains

the number 58,187.05. Form 1 states the funds received by the estate to be $56,851.05, including $350.37 in interest. Form 2 slates receipts at $56,749.08, a discrepancy presumably explained by failure to include some interest.[3] Without support for the higher number in the final report, the court will use the figure in Form 1. Therefore, based on the following calculation, the trustee's fees in the reduced amount of $6,092.55 will be awarded:

| | |
|---|---|
| 25% of the first $ 5,000 | $1,250.00 |
| 10% of the next $45,000 | $4,500.00 |
| 5% of the next $ 6,851.05 | $ 342.55 |
| Total allowable compensation: | $6,092.55 |

### The Trustee's Professionals' Fees

#### 1. Fees of DKE

■ The fee application of DKE for legal services performed on behalf of the trustee must be substantially reduced for several reasons.

First, as noted above, section 328(b) presents a threshold issue: whether the services were required to be performed by a lawyer or were, instead, within the scope of the trustee's duties and thus only compensable under section 326. The itemization of services attached to the DKE fee application contains numerous entries for tasks that should ordinarily be performed by a trustee. These entries are listed in Appendix A at the end of this opinion. They total $4,170.00, and that amount of DKE's request will be disallowed on this basis.

Second, section 330 precludes compensation for services which are unnecessarily duplicative. The DKE itemization contains several entries that unnecessarily duplicate the work of special counsel Troy.

---

**3.** The docket contains an entry titled "Notice of Filing of U.S. Trustee's Certificate of Review of Trustee's Final Report." The document reads in part, "The United States Trustee has reviewed the Trustee's Final Report ... and has no objection to the Trustee's Final Report." Given the extent of the court's concerns about this final report, and the inconsistency of the pertinent numbers, the court questions the level of scrutiny included in the U.S. Trustee's review.

These entries are listed in Appendix B and total $2,679.00. That amount of DKE's request will also be disallowed.

Third, unnecessarily duplicative services constitute the bulk of the DKE itemization section titled "Litigation." This section contains charges in excess of $10,000. The trustee, in her applications to employ special litigation counsel, emphasized the expertise of the attorneys and their extensive litigation experience. Yet, the charges under the "Litigation" section of DKE's itemization of services cast doubt on that expertise. DKE asserts $7,366.50 in attorney's fees for drafting, redrafting, reviewing, and editing the work of special counsel—namely, the complaints in the adversary proceedings. The additional $3,030.50 in fees contained in this section are for correspondence and communications with special litigation counsel relating to the drafting, redrafting, reviewing, and editing of the complaints. In total, four attorneys billed the estate over $10,000 in attorneys' fees for drafting two complaints, and over $100,000 in attorneys' fees relating to litigation.[4]

Because the entries in the DKE fee application did not provide the court with sufficient information to justify awarding these fees, the court sought clarification and invited the trustee's supplemental filing. Unfortunately, the supplement offers no helpful analysis. Instead, the trustee merely gives bold assertions that her work was necessary because her assistance was requested by special litigation counsel. Her explanation for these requests is that Troy and Johnson specialize in forensic collections and have no bankruptcy expertise. This, evidently, required DKE to review and revise each and every action, communication, and filing of these attorneys at great expense to the estate.

The trustee's failure to clarify, coupled with unsettling statements in her supplement regarding her failure to record time entries for all services and acknowledgment of some unnecessary duplication of services, prevents a finding that the fees requested by DKE for litigation services to the estate should be allowed in full. Although some services by DKE may have been necessary and not duplicative, the request for $10,397.00 in legal fees by DKE for litigation services to the estate has not been justified. Accordingly, the court will reduce the amount by 50%, thereby disallowing $5,198.50 as unnecessarily duplicative.

Fourth, several entries in the DKE itemization relate to work on a tolling agreement. In her supplement, the trustee states that she had to perform these services because of personality conflicts between her special counsel (both Troy and Johnson) and the debtor's counsel These entries are listed in Appendix C and total $1,510.50. These entries are unnecessarily duplicative of the services special counsel were retained to perform. Moreover, because the services should have been performed by special counsel, the entries are objectionable on the additional ground that they were not necessary to the administration of the estate. The amount of $1,510.90 will be disallowed from DKE's fees for these reasons.

Finally, the itemization for DKE also contains numerous entries for services that were performed outside the period of time for which DKE was authorized to perform legal services for the trustee. The order authorizing employment of DICE by the trustee was entered on May 14, 2004, and

---

4. DKE attorney fees for litigation were $10,397.00. Troy and Johnson initially requested fees relating to their services as special litigation counsel in the amount of $92,053.75. The total of initial fees requested regarding litigation amounts to $102,450.75.

contained the language "effective, *nunc pro tunc.*" Although that language is vague, the earliest the authorization could be effective is the date of the motion for retention. The retention motion was filed on May 10, 2004, and the court will deem the authorization effective then. Appendix D lists the DKE services performed before May 10, 2004. These services total $937.00, and that amount will be disallowed.

Summarizing the reductions in DKE's award, $4,170.00 will be disallowed as trustee's work; $2,679.00 will be disallowed as unnecessarily duplicative of Troy's work; $5,198.50 will be disallowed as unnecessarily duplicative litigation services; $1,510.50 will be disallowed as both unnecessarily duplicative and not necessary; and $937.00 will be disallowed as performed prior to the effective employment date. These amounts total $14,495.00. Accordingly, fees will be awarded to DKE in the amount of $8,012.50.

### 2. *Fees of the Trustee's Other Professionals*

Johnson submitted his fee application on August 8, 2007 seeking $80,841.25 in fees and $1,075.58 in expenses. On August 31, 2007, the court awarded him interim fees in the amount of $40,000.00, authorized the trustee to make an interim distribution to him of $12,000.00, and directed him to refile his application if he sought a further award. He has not filed any further applications, and the trustee now asks that he be given a final award of $40,000.00, to be paid pro rata with credit for the $12,000.00 previously paid. The court will award the fees as now requested.

Troy and West seek fees in the amounts of $11,212.00 and $3,288.00 respectively. Given that both will be discounted substantially when paid pro rata with available funds, the court will award their fees as requested.

### *The Trustee's Supplement*

In response to the court's articulated concerns regarding the final report, the trustee filed a "Supplement to Fee Request of Deborah K. Ebner." In the supplement she asserts that her efforts have "created a one hundred percent (100%) distribution to all non-insider creditors with claims on file, satisfaction of insider claims by the Debtor's family, a waiver of the Debtor's discharge for the protection of any creditor who did not file a claim, and a voluntary subordination of all professional fees to the claims of non-insider creditors."

The supplement provides little information that is new to the court and no analysis or argument that is persuasive. The supplement accurately describes the result of the trustee's work, but it does not lessen the court's concerns about how this case was administered. However laudable the result, the expense at which it was achieved raises a question about the reasonableness and necessity of the professional services. Nevertheless, because the law does not require services to result in a financial benefit to the estate. *In re Lifschultz Fast Freight,* 140 B.R. 482, 488 (Bankr.N.D.Ill.1992), the court will make no further reductions in the fees beyond those detailed above.

The court must comment on the trustee's repeated use in the supplement of the phrase "one hundred percent (100%) distribution" to non-insider creditors. Use of this phrase both distorts the facts of this case and contradicts the trustee's final report. "Distribution" is a term of art in the bankruptcy world, and it describes the process by which property is collected by the trustee, converted to cash if necessary, and distributed to parties in interest. As correctly stated in the final report, there

will be no distribution by the trustee to creditors. The trustee is urged to be more precise in her rhetoric in the future.

### Conclusion

The various fee requests are approved to the extent discussed above. The expense requests for the trustee and Troy are approved. Separate orders will be entered.

The trustee's final report is not approved, and she is ordered to file an amended final report incorporating these awards,

## APPENDIX A
### (Trustee Services Under § 707)

| Asset Analysis/Recovery | | Time | Rate | Amount |
|---|---|---|---|---|
| 05/19/04 | Review file (.8) and t/c with Troy (.8) re: pension fund transfers and recovery threories(sic) in addition to joining Mom and Pension companies under 11 USC 550 et al | 1.10 | 285.000 | 313.50 |
| 06/01/04 | long distance phone call with Milwaukee atty. who represents buyer of real estate regarding saleability of property, and patch in Troy | 0.30 | 285.000 | 85.50 |
| 06/06/04 | Receipt and review of correspondence from real estate atty and Troy re: Wisconsin real estate and left message re: status and strategy | 0.50 | 285.000 | 142.50 |
| 06/07/04 | extensive meeting with Troy going over facts known to date . . . and development of multi-count complaint | 1.00 | 285.000 | 142.50 |
| 06/16/04 | Full review and analysis of Troy letter (.3) and attached contract (.4), with Exhibits (.4) received 6/14 re: Wisconsin real estate and ext. t/c with him re: how to proceed (.5). | 1.30 | 285.000 | 370.50 |
| 06/16/04 | Teleconference with Troy re: realty title issues and sale issues | 0.40 | 285.000 | 370.50 |
| 09/03/04 | review of Grocho written response | 0.30 | 285.000 | 85.50 |
| 09/08/04 | t/c with David Grocho . . . re: letter of last week and his efforts to facilitate a settlement conference | 0.40 | 285.000 | 114.00 |
| 09/22/04 | t/c with DG re: settlement status | 0.30 | 285.000 | 85.50 |
| 09/27/04 | review and draft response to DG letter; call to Troy to confirm facts; call to David Shannon Esq (312)xxx-xxxx* to confirm judgments and Defendants and outstanding # 's etc. | 1.20 | 285.000 | 342.00 |

* intentionally omitted

| Date | Description | | | |
|---|---|---|---|---|
| 10/04/04 | call back to DG returning call left message—and follow-up to DG re: gestures toward settlement | 0.30 | 285.000 | 85.50 |

*Case Administration*

| | | | | |
|---|---|---|---|---|
| 06/16/04 | Telephone call to Norm Cowie re: Stevens contacts | 0.20 | 220.000 | 44.00 |
| 06/21/04 | begin drafting motion to extend trustee's right to move to vacate discharge | 2.50 | 220.000 | 550.00 |
| 06/22/04 | corresp to Trustee re: motion to extend | 0.10 | 220.000 | 22.00 |
| 06/23/04 | receipt and review of Troy letter—call back to Troy re: equitable subordination of mortgage issue—strategy and response | 0.40 | 285.000 | 114.00 |
| 06/24/04 | review mail from David Grocho (.2), call back and left ext. t/m (.1) | 0.30 | 285.000 | 114.00 |
| 06/24/04 | extensive teleconference with DG re: appearance of unauthorized attempted post petition secretion of assets, and sale of same. And need to acquire voluntary extension of Statute to prevent Motion for trustee ... with thorough explanation | 1.10 | 285.000 | 313.50 |
| 06/24/04 | Meeting with Troy re: status of conf. with DG and related items | 0.30 | 285.000 | 85.50 |

*Fec Employment Applications*

| | | | | |
|---|---|---|---|---|
| 05/14/04 | Ct. appearance on hearing to retain general and special counsel | 0.50 | 285.000 | 142.50 |
| 06/10/04 | draft Notice of Motion to employ financial advisor | 0.20 | 220.000 | 44.00 |
| 06/10/04 | draft order authorizing employment of financial advisor | 0.20 | 220.000 | 44.00 |
| 06/14/04 | draft application to employ financial advisor | 0.60 | 220.000 | 132.00 |
| 06/16/04 | Telephone call from Trustee re: Lois West | 0.10 | 220.000 | 22.00 |
| 06/16/04 | Telephone call to Lois West re: employment | 0.20 | 220.000 | 44.00 |
| 06/16/04 | revise motion to employ accountant, notice and order | 0.40 | 220.000 | 88.00 |
| 07/09/04 | Ct appearance on Motion to retain Lois | 0.30 | 285.000 | 85.50 |
| 09/27/04 | review memo from Trustee re: withdrawal as general counsel and substitution of Don Johnson | 0.10 | 220.000 | 22.00 |
| 09/28/04 | t/c to Trustee re: motion to withdraw | 0.10 | 220.000 | 22.00 |

| 09/29/04 | draft motion to withdraw and substitute | 0.60 | 220.000 | 132.00 |
|----------|------------------------------------------|------|---------|--------|
| 09/29/04 | draft two orders—to withdraw and to substitute | 0.30 | 220.000 | 66.00 |
| 09/29/04 | draft notice of motion to withdraw and substitute | 0.10 | 220.000 | 22.00 |
| 09/29/04 | draft Johnson affidavit | 0.10 | 220.000 | 22.00 |
| 09/29/04 | memo to Johnson re: affidavit execution | 0.10 | 220.000 | 22.00 |
| 09/29/04 | t/c from Johnson re: fee schedule | 0.10 | 220.000 | 22.00 |
| Total: | | | | $ 4,170.00 |

## APPENDIX B
### (Unnecessarily Duplicative)

| *Case Administration* | | *Time* | *Rate* | *Amount* |
|-----------------------|---|--------|--------|----------|
| 06/28/04 | Teleconference with Troy re; procedural posture, taking of 2004 and legal purpose, etc. | 0.80 | 285.000 | 228.00 |
| 07/16/04 | review of Troy's deposition outline and questions(1.5) and call back to discuss in ant. of Monday dep (.7). | 2.20 | 285.000 | 627.00 |
| 07/19/04 | review of Troy t/m and note | 0.20 | 285.000 | 57.00 |
| 07/20/04 | Receipt and partial review and analysis of lengthy letter with exhibits following up deposition yesterday | 1.60 | 285.000 | 456.00 |
| 08/13/04 | Review of 2004 evidence prior to and in anticipation of meeting with CL and Troy this afternoon. | 1.30 | 285.000 | 370.50 |
| 08/19/04 | Review Troy edits and issues raised by letter re: tax liability and pension issues | 0.60 | 285.000 | 171.00 |
| 08/27/04 | Further edits of Complaint, and receipt and review of yet additional discovery | 2.30 | 285.000 | 655.50 |
| 10/21/04 | conf with Troy re status | 0.40 | 285.000 | 114.00 |
| Total: | | | | $ 2,679.00 |

## Appendix C
### (The Tolling Agreement)

| | | *Time* | *Rate* | *Amount* |
|---|---|--------|--------|----------|
| 06/28/04 | Receipt and review of Troy's draft 2004 does and tolling agreement—edit same | 0.40 | 285.000 | 114.00 |
| 06/28/04 | further edit tolling agreement | 0.30 | 285.000 | 85.50 |

| Date | Description | Time | Rate | Amount |
|---|---|---|---|---|
| 07/28/04 | t/c with Troy … and overview of deposition items; dictation of request to extend tolling,,,,,, and call to DAvid re: tolling agreement and other issues | 2.30 | 285.000 | 655.50 |
| 07/29/04 | follow-up t/c with DG re: agreement | 0.30 | 285.000 | 85.50 |
| 07/29/04 | t/c Troy re: issues raised by DG and edit Motion for filing | 0.30 | 285.000 | 85.50 |
| 07/29/04 | call back to Troy—re: status of calls to DG and extension | 0.30 | 285.000 | 85.50 |
| 07/30/04 | Further edits to Motion in light of conversations with DG | 0.40 | 285.000 | 114.00 |
| 09/27/04 | t/c to Troy and DJ to resign and call to CL to draft substitution papers | 0.30 | 285.000 | 85.50 |
| 10/14/04 | Receipt and review of letter from Troy to DG and revise/rewrite the whole thing and follow-up call | 0.70 | 285.000 | 199.50 |
| Total: | | | | $ 1,510.50 |

## APPENDIX D
### (Services Beyond Employment Term)

| *Asset Analysis/Recovery* | | *Time* | *Rate* | *Amount* |
|---|---|---|---|---|
| 04/13/04 | t/c with Steve Levit who represents co-owner of Wisconsin real estate | 0.30 | 285.000 | 85.50 |
| 04/13/04 | t/c w/ Stve(sic) Levitt re: brother's interest in house | 0.20 | 285.000 | 57.00 |
| 04/21/04 | t/e with CL re: case overview and instruct to retain Troy, and us | 0.30 | 285.000 | 85.50 |
| 04/21/04 | Follow-up call with Steve Levitt re: possible buy-out of brothers(sic) problems | 0.30 | 285.000 | 85.50 |

| *Fee/Employment Applications* | | | | |
|---|---|---|---|---|
| 04/21/04 | Telephone call to Troy re: accepting employment as special counsel | 0.10 | 220.000 | 22.00 |
| 04/21/04 | Review of docket and schedules in preparation of draft employment applications | 0.50 | 220.000 | 110.00 |
| 04/21/04 | Telephone call from Trustee re: preparation of employment applications | 0.20 | 220.000 | 44.00 |
| 04/21/04 | draft application to employ general and special counsel | 0.90 | 220.000 | 198.00 |
| 04/21/04 | draft orders authorizing employment | 0.40 | 220.000 | 88.00 |
| 04/21/04 | draft notice of motion to employ | 0.20 | 220.000 | 44.00 |

| Date | Description | | | |
|---|---|---|---|---|
| 04/21/04 | draft Ebner Affidavit | 0.10 | 220.00 | 22.00 |
| 04/21/04 | draft Lambert affidavit | 0.10 | 220.000 | 22.00 |
| 04/21/04 | draft Troy affidavit | 0.10 | 220.000 | 22.00 |
| 04/21/04 | letter to Troy re: conflict of interest and execution of affidavit | 0.20 | 220.000 | 44.00 |
| 04/21/04 | prepare service list | 0.10 | 75.000 | 7.50 |
| Total: | | | | $  937.00 |